[Civ. No. 24642. Second Dist., Div. Three. Mar. 29, 1961.]

L. B. ABRONS, Appellant, v. RICHFIELD OIL CORPORATION (a Corporation), Respondent.

Martin B. Berman and Joseph M. Wapner for Appellant.

Clarence S. Hunt for Respondent.

FORD, J— This is an appeal from a judgment of nonsuit in an action for personal injuries. The appellant was employed by C. F. Braun and Company, an independent contractor engaged in doing construction work for the respondent, Richfield Oil Corporation, on Richfield's premises. The appellant's injuries were received when dirt caved in upon him in a ditch he was digging. The facts are set forth

in a settled statement on appeal (rule 7 of Rules on Appeal), portions of which are set forth in the margin.[1]

[1]"The following evidence was introduced on behalf of plaintiff.

"Edward H. Chittick was called as a witness by plaintiff under the provisions of Section 2055 of the Code of Civil Procedure, who testified substantially as follows:

"He was the assistant supervisor of safety and fire prevention of the Watson Plant of the Richfield Oil Corporation and was acting in that capacity on August 15, 1953. At that time and place construction work was being done for and on behalf of Richfield Oil Corporation by C. F. Braun & Company, a corporation, as an independent contractor. This work was being done on the northern portion of the Watson Plant and consisted of the construction and erection of a cracking plant for the Richfield Oil Corporation. A portion of the Watson Plant was divided and the northerly sector was known as the 'Braun Sector', the southerly sector was known as the 'Richfield Sector'; these sectors were separated and ingress and egress provided by means of a gate. The Braun Company employees were completely independent of the Richfield Oil Corporation and Braun had complete control and supervision of all phases of the construction and of anything going on in connection therewith in either the Braun or Richfield Sectors. The Richfield employees exercised no supervision or control of the Braun employees in the course of the latter's work in either the Braun or Richfield sectors. Ingress and egress between the two sectors was controlled by a gate, a guard was stationed at the gate and Braun employees were permitted to enter the Richfield sector for purposes of performing their work only if the guard had been notified that they were to be permitted entry in that sector, and therefore, it was the practice that the Braun employees would obtain permission to enter before making such an entry. On the date in question, he gave Mr. Abrons, the plaintiff, and two other of his co-employees permission to enter the Richfield sector in connection with their work with Braun Company and he informed the guard at the gate to that effect.

"The duties of the assistant supervisor of the safety department were to oversee and assure safety of the Richfield Plant facilities and employees within the Richfield area and to prevent fires therein, but his jurisdiction and duties in the Richfield safety department did not extend to nor include that work being performed by the Braun Company or its employees and did not include any supervision or jurisdiction over the particular ditch being dug at the time of the accident. Braun had its own safety superintendent who exercised control over all of the Braun employees and their construction work.

"'L. B. Abrons, plaintiff, after being duly sworn, testified substantially as follows:

"On August 15, 1953, he was an employee of the C. F. Braun & Company working on the construction of the cracking plant at the Richfield Watson Plant. On that date he was informed by his gang boss to go with his gang boss and one other employee to dig a ditch in the area of the Richfield sector. He followed these instructions and they went over to an area in the Richfield sector adjacent to a drainage moat from a cement lined reservoir containing oil. The ditch was dug for the purpose of putting a 'dead man' therein. That phrase in the trade means a cement foundation to which guy wires from a construction crane were to be attached, which crane was owned by the Braun Company and was to be thereafter used to hoist certain tanks and towers which would thereafter become a part of the cracking plant. The crane itself, the guy wires and the dead man were not in

■ ''Although it is the established rule that in passing upon a motion for a nonsuit all conflicts in the evidence must be resolved in favor of the plaintiff and every legitimate inference favorable to the plaintiff must be drawn therefrom, nevertheless a nonsuit must be granted where . . . the evidence is legally insufficient to support a judgment in plaintiff's favor.'' (*Powell* v. *Jones*, 133 Cal.App.2d 601, at p. 605 [284 P.2d 856].) We have come to the conclusion that the present case is one in which the appellant has shown no basis for a recovery of damages as against the respondent.

■ The appellant was an invitee of Richfield on the premises where the accident occurred. (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 232 [282 P.2d 69]; *Bickham* v. *Southern California Edison Co.*, 120 Cal.App.2d 815, 819 [263 P.2d 32].) ■ As stated in the Austin case, just cited, at pages 232-233: '' 'One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for bodily harm to others, for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care. . . . ■ The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless

any way to become a part of the finished plant but were in fact a construction tool. He observed that the ground that was being excavated was oil saturated. A gang boss for the Braun Company was present during the entire excavation and observed the condition of the soil and a Braun foreman visited the area several times. The digging was going on in the Richfield sector but no one from the Richfield Oil Corporation was present at any time and no one from Richfield observed the work or assisted in any way. No one provided shoring materials and none were used during any of the operations although there was a wooden barricade not built by Richfield or any of its employees next to the excavation to prevent the loose dirt from falling down into an adjacent drainage moat. The deeper he dug the more oil saturation manifested itself and there was an oily odor within the excavation. When the excavation was approximately six feet deep a cave-in occurred, killing one of the men working there and injuring Abrons.

"There was other evidence by the plaintiff Abrons as to the nature and extent of injuries, medical expenses, and other elements of damages. Likewise, medical testimony was offered, describing the nature and extent of the injuries sustained by said plaintiff. Thereafter plaintiff rested."

he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.' (Rest., Torts, § 414.) ▮▮▮ Generally, the owner of property '. . . is under a duty to keep in safe condition all portions of premises over which he has control' (*Sexton* v. *Brooks*, 39 Cal.2d 153, 156 [245 P.2d 496]) and in more detail: 'A possessor of land who knows, or reasonably should know, of a natural or artificial condition upon his premises which, he should foresee, exposes his business visitors to an unreasonable risk, and who has no basis for believing that they will discover the condition or realize the risk involved therein, is under a duty to exercise ordinary care either to make the condition reasonably safe for their use or to give a warning adequate to enable them to avoid the harm.' (*Crane* v. *Smith*, 23 Cal.2d 288, 296 [144 P.2d 356]; see also Prosser on Torts, pp. 642 et seq.) ''

▮▮▮ Section 6400 of the Labor Code, where applicable, adds a statutory duty to the normal duties of an invitor.[2] (*Atherley* v. *MacDonald, Young & Nelson, Inc.*, 142 Cal. App.2d 575, 580-581 [298 P.2d 700].) ▮▮▮ As explained in *Johnson* v. *A. Schilling & Co.*, 170 Cal.App.2d 318, at page 322 [339 P.2d 139]: ''Section 6302, Labor Code, defines 'place of employment' as 'any place, and the premises appurtenant thereto, where employment is carried on . . .' Section 6304 reads: ' ''Employer'' shall have the same meaning as in section 3300 and shall also include every person having direction, management, control, or custody of any employment, *place of employment*, or any employee.' (Emphasis ours.) ▮▮▮ This definition is obviously intended to enlarge the meaning of 'employer' beyond its usual meaning for the purposes of Division 5 of the Labor Code in which it is found and which deals specifically with 'Safety In Employment.' ▮▮▮ Where an owner of real property contracts to have work done on his property such property becomes a place 'where employment is carried on' and hence a place of employment under the definition of section 6302. Since the owner has 'custody and control' of his own property, he then has custody and control of a 'place of employment' and hence is an 'employer' within the definition of section 6304.'' (See also *Maia* v. *Security Lumber & Concrete Co.*, 160 Cal.App.2d 16, 20 [324 P.2d 657].)

---

[2]Section 6400 of the Labor Code is as follows: "Every employer shall furnish employment and a place of employment which are safe for the employees therein."

When the evidence in the present case is viewed in the light of the applicable law, no breach of duty on the part of Richfield appears. As said in the settled statement: "The Richfield employees exercised no supervision or control of the Braun employees in the course of the latter's work in either the Braun or Richfield sectors." The purpose of the ditch which the appellant undertook to dig was to facilitate the construction of a cement foundation to which guy wires from a Braun construction crane were to be attached; such foundation was not to become a part of the plant under construction. There is nothing to indicate that Richfield should have anticipated that such a cement foundation would be placed in "an area in the Richfield sector adjacent to a drainage moat from a cement lined reservoir containing oil." There is no evidence that other suitable and sound ground was not available for use for the intended purpose. The particular site was that chosen by Braun. The appellant observed that the ground that was being excavated was "oil saturated." His testimony, as set forth in the settled statement, was that the "deeper he dug the more oil saturation manifested itself and there was an oily odor within the excavation." Braun furnished no shoring materials. No one "from the Richfield Oil Corporation was present at any time and no one from Richfield observed the work or assisted in any way." Pertinent to such a state of facts is the observation of the court in *Johnson* v. *A. Schilling & Co., supra,* 170 Cal.App.2d 318, at page 323: "Cases such as *Deorosan* v. *Haslett Warehouse Co.,* 165 Cal.App.2d 599 [332 P.2d 422], and *Hard* v. *Hollywood Turf Club,* 112 Cal.App.2d 263 [246 P.2d 716], are distinguishable on their facts. In those cases the dangerous condition was created by the injured employee's immediate employer during the course of the work, a condition over which the owner in the one case and the general contractor in the other did not have 'direction, management, control, or custody' within the meaning of section 6304 Labor Code. (*Deorosan* v. *Haslett Warehouse Co., supra,* 165 Cal.App.2d pp. 599, 617-618.) It was because of this distinction that the court in *Atherley* v. *MacDonald, Young & Nelson, Inc.,* 142 Cal.App.2d 575 [298 P.2d 700], stressed the fact that the owner in that case was also in fact the builder, with the contractor acting as its agent, since the dangerous condition in Atherley was created by the contractor in the course of construction, a matter over which the owner *as owner* would not have had 'direction, management, control, or custody.'" The appel-

lant's evidence in the present case clearly fell short of that required to establish liability on the part of Richfield as the owner of the premises. (*Gonzales* v. *Robert Hiller Const. Co.,* 179 Cal.App.2d 522, 527-529 [3 Cal.Rptr. 832]; *cf. McDonald* v. *Shell Oil Co.,* 44 Cal.2d 785 [285 P.2d 902].)

The judgment is affirmed.

Vallée, J., concurred.

Shinn, P. J., did not participate.