[No. S118561. Dec. 19, 2005.]

RAY KINSMAN et al., Plaintiffs and Respondents, v.
UNOCAL CORPORATION, Defendant and Appellant.

## COUNSEL

Horvitz & Levy, David M. Axelrad, Stephen E. Norris; Walsworth, Franklin, Bevins & McCall, Michael T. McCall, Robert M. Channell, Cyrian B. Tabuena and Allan W. Ruggles for Defendant and Appellant.

Charles H. Haake; Gibson, Dunn & Crutcher, Andrea E. Neuman; Knott & Glazier, Steven E. Knott and Guy P. Glazier for Lockheed Martin Corporation as Amicus Curiae on behalf of Defendant and Appellant.

Sedgwick, Detert, Moran & Arnold and Frederick D. Baker for American Chemistry Council as Amicus Curiae on behalf of Defendant and Appellant.

Deborah J. La Fetra and Timothy Sandefur for Pacific Legal Foundation as Amicus Curiae on behalf of Defendant and Appellant.

Greines, Martin, Stein & Richland, Marc J. Poster and Robert A. Olson for Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange and Mid-Century Insurance Company as Amici Curiae on behalf of Defendant and Appellant.

Graves & King, Patrick L. Graves, Harvey W. Wimer and Dennis J. Mahoney for Lennar Corporation as Amicus Curiae on behalf of Defendant and Appellant.

Law Offices of Daniel U. Smith, Daniel U. Smith, Ted W. Pelletier; Wartnick, Chaber, Harowitz & Tigerman, The Wartnick Law Firm, Harvey F. Wartnick, Charles C. Kelly II, Steven M. Harowitz, Stephen M. Tigerman and Richard A. Brody for Plaintiffs and Respondents.

James C. Sturdevant; Sharon Arkin; The Arns Law Firm, Morgan C. Smith, Jonathan E. Davis and Robert S. Arns for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Respondents.

Ropers, Majeski, Kohn & Bentley, Mark G. Bonino and Elisa Nadeau for American International Companies as Amicus Curiae.

## Opinion

**MORENO, J.**—In a series of decisions over the last dozen or so years, this court has delineated the circumstances under which the employee of an independent contractor who is injured on the job may sue the hirer of that contractor. (*Privette v. Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*); *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253 [74 Cal.Rptr.2d 878, 955 P.2d 504] (*Toland*); *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235 [108 Cal.Rptr.2d 617, 25 P.3d 1096] (*Camargo*); *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 [115 Cal.Rptr.2d 853, 38 P.3d 1081] (*Hooker*); *McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219 [115 Cal.Rptr.2d 868, 38 P.3d 1094] (*McKown*).) This case requires us to consider an issue not addressed by the previous cases: when, if ever, is a landowner that hires an independent contractor liable to an employee of that contractor who is injured as the result of hazardous conditions on the landowner's premises? Specifically, in this case we must decide whether a carpenter employed by an independent contractor that installed scaffolding for workers who replaced asbestos insulation in an oil refinery facility may sue the refinery owners for injuries caused by exposure to asbestos, when it is claimed that only the refinery owner knew the carpenter was being exposed to a hazardous substance.

We conclude that a landowner that hires an independent contractor may be liable to the contractor's employee if the following conditions are present: the landowner[1] knew, or should have known, of a latent or concealed preexisting hazardous condition on its property, the contractor did not know and could not have reasonably discovered this hazardous condition, and the landowner failed to warn the contractor about this condition. We further conclude that under the circumstances of the present case, the jury was not sufficiently instructed that the landowner was liable in this case only for failing to warn about a *hidden* hazardous condition, and that the lack of sufficient instruction was prejudicial to defendant. We therefore reverse the jury verdict in plaintiffs' favor and remand for a new trial.

## I. Statement of Facts

The following facts, as stated by the Court of Appeal below, are not in dispute: "During the 1950's, plaintiff Ray Kinsman worked on many occasions as a carpenter at defendant Unocal's refinery in Wilmington, California. Kinsman was employed by Burke & Reynolds, an independent contractor

---

[1] Although the term "landowner" is used throughout this opinion, and the land in question was owned by defendant Unocal Corporation, that term is used to refer to either an owner or a possessor of land that owes some kind of duty of care to keep the premises safe. (See *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1155–1156 [60 Cal.Rptr.2d 448, 929 P.2d 1239].)

Unocal hired to perform scaffolding work during periods of 'shutdown' and repair at the refinery. Kinsman built and dismantled scaffolding used by other trades, including pipefitters and insulators. This work exposed him to airborne asbestos, which was produced by other trades—particularly insulators—during their application and removal of asbestos-containing insulation from pipes and machinery. Though Kinsman did not work directly with such insulation, the evidence showed he was exposed to asbestos dust in three ways: (1) When insulators worked on scaffolding, asbestos-containing debris accumulated on the planks. Kinsman was exposed to this asbestos material when he cleared debris from the planks in dismantling used scaffolding. (2) Some asbestos dust was produced from Kinsman's work 'tying in' scaffolding to insulated pipes or equipment. (3) Asbestos fibers released by the work of other trades 'float[ed] in the air,' exposing Kinsman as he worked nearby. Kinsman did not wear a mask or respirator at Unocal.

"Years later, Kinsman developed mesothelioma, an asbestos-induced malignant cancer of the lining of the lungs. He sued scores of product manufacturers and distributors, as well as several premises owners. Ultimately, the case proceeded to a jury trial against Unocal, a 'premises defendant,' alone. The parties stipulated that Kinsman was exposed to asbestos during his work at Unocal. In addition, following uncontroverted expert testimony that labeled this exposure a 'substantial factor' contributing to Kinsman's development of mesothelioma, the trial court granted a directed verdict for Kinsman on the issue of causation. Because the parties also stipulated Kinsman bore no contributory fault, the only disputed issues before the jury concerned whether, and to what extent, Unocal was negligent, whether Kinsman's wife suffered a loss of consortium, and the amount of damages suffered by the Kinsmans."

Other critical facts are in dispute. Kinsman presented evidence that knowledge of asbestos dust as a hazard in the oil industry was well known by the 1950's. In particular, the so-called Bonsib Report prepared by the Standard Oil Company and released in 1937 identified the risks associated with asbestos dust in oil refineries. Kinsman argued that given industry knowledge, Unocal should have warned Kinsman's employer or adopted various safety measures. He produced evidence showing that other oil companies in the 1950's had adopted various safety measures, including better ventilation, plant design, and use of respirators.

Unocal conceded that it was aware of the hazards of asbestos dust by the 1950's. But Unocal argued that Kinsman was not exposed to levels of asbestos that were considered unsafe at the time. It contended that according to then-existing industry standards, exposure to asbestos dust was considered unsafe only in concentrations of five million particles per cubic foot or more, and that there was no evidence that Kinsman was exposed to such concentrations. In denying Unocal's motion for a directed verdict on that basis, the trial

court concluded this standard was not tantamount to a government regulation, compliance with which would protect Unocal from negligence claims. Kinsman, in closing argument, pointed to the lack of evidence that Unocal complied with the industry standards, as well as testimony questioning the validity of those standards.

Burke & Reynolds did not provide safety equipment to Kinsman, and there is no specific evidence in the record regarding whether it, or any other contractor working for Unocal, knew or should have known at the time Kinsman worked at the refinery that asbestos posed a safety hazard.

Kinsman submitted his case on two theories of liability: first, a premises liability theory, that Unocal was negligent in the use, maintenance, or management of the areas where Kinsman worked; second, that Unocal was negligent in the exercise of retained control over the methods of the work or the manner of the work performed by Kinsman. The jury found for Kinsman only on the first theory. It assigned Unocal 15 percent of the fault in causing Kinsman's mesothelioma, with the remaining 85 percent of fault attributable to "all others," and awarded Kinsman over $3 million in compensatory damages against Unocal.

Unocal separately appealed from the judgment on the jury verdict and the court's denial of its motion for judgment notwithstanding the verdict. The Court of Appeal consolidated the appeals and reversed the judgment. After reviewing *Privette, Toland, Camargo, Hooker* and *McKown,* the court concluded that "a contractor's employee cannot recover under [a premises liability] theory unless the landowner had control over the dangerous condition and affirmatively contributed to the employee's injury." The court further rejected the argument that the *Privette* doctrine does not apply because there is no proof the contractor was negligent, and because the dangerous condition was created by other contractors hired by Unocal rather than Unocal itself.

Because the jury instructions given did not accurately reflect Unocal's limited duty as understood by the Court of Appeal, the court reversed and remanded for a new trial. However, the court opined that, in light of the jury's finding that Unocal did not retain control over Kinsman's work, "if the jury had been instructed about the limits on Unocal's liability described in this opinion, it would likely have concluded Unocal had no liability to Kinsman whatsoever—because Unocal did not retain control over the dangerous condition (i.e., airborne asbestos) present on its land, or because the evidence did not show that Unocal affirmatively contributed to Kinsman's injury." We granted review.

## II. Discussion

### A. *The* Privette *Doctrine*

Our discussion begins with a review of *Privette* and its progeny. In *Privette, supra,* 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721], a roofing contractor was responsible for installing a new tar and gravel roof on a duplex. An employee was injured transporting five-gallon buckets of hot tar up to the roof on a ladder, not using the kettle and pumping device previously employed. The employee sought workers' compensation benefits, but also sued in tort the owner of the duplex who had hired the contractor for whom the employee worked, although the owner was not present during the roofing process and did not participate in the contractor's decision to have the employee hand carry the buckets. (*Privette, supra,* 5 Cal.4th at pp. 692–693.) The employee eventually focused on a single theory of liability, that "because of the inherent danger of working with hot tar, [the owner] should, under the doctrine of peculiar risk, be liable for injuries to [the employee] that resulted from [the contractor's] negligence." (*Id.* at p. 692.)

The lower courts denied the owner's summary judgment motion, but we reversed, rejecting application in this context of the peculiar risk doctrine found in the Restatement Second of Torts, section 416. As we explained: "At common law, a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work. [Citations.] Central to this rule of nonliability was the recognition that a person who hired an independent contractor had ' "no right of control as to the mode of doing the work contracted for." ' [Citations.] The reasoning was that the work performed was the enterprise of the contractor, who, as a matter of business convenience, would be better able than the person employing the contractor to absorb accident losses incurred in the course of the contracted work. This could be done, for instance, by indirectly including the cost of safety precautions and insurance coverage in the contract price." (*Privette, supra,* 5 Cal.4th at p. 693.)

We further explained that numerous exceptions to the rule of nonliability developed over the years, including the peculiar risk doctrine. The basis for that exception, as explained in a leading English case, was that a " 'man who orders a work to be executed, from which, in the natural course of things, injurious consequences to his neighbor must be expected to arise . . . cannot relieve himself of his responsibility by employing some one else . . . .' [Citation.] . . . [T]he English court held a landowner liable for damages to his neighbor's property when an independent contractor hired by the landowner to tear down an old house on his land and to build a new one on the same site, but with a deeper foundation, undermined the ground supporting the neighbor's house." (*Privette, supra,* 5 Cal.4th at p. 694.)

"The courts adopted the peculiar risk exception to the general rule of nonliability to ensure that innocent third parties injured by the negligence of an independent contractor hired by a landowner to do inherently dangerous work on the land would not have to depend on the contractor's solvency in order to receive compensation for the injuries. [Citations.] It was believed that as between two parties innocent of any personal wrongdoing—the person who contracted for the work and the hapless victim of the contractor's negligence—the risk of loss occasioned by the contracted work was more fairly allocated to the person for whose benefit the job was undertaken. [Citation.] Also, by spreading the risk of loss to the person who primarily benefited from the hired work, the courts sought to promote workplace safety, a concern of great significance to the public." (*Privette, supra,* 5 Cal.4th at p. 694.)

 We concluded that the justifications for the peculiar risk doctrine did not apply to situations in which a contractor's employee is injured and workers' compensation is available. As we explained, the peculiar risk doctrine "seeks to ensure that injuries caused by contracted work will not go uncompensated, that the risk of loss for such injuries is spread to the person who contracted for and thus primarily benefited from the contracted work, and that adequate safety measures are taken to prevent injuries resulting from such work. [Citation.] But in the case of on-the-job injury to an employee of an independent contractor, the workers' compensation system of recovery regardless of fault achieves the identical purposes that underlie recovery under the doctrine of peculiar risk. It ensures compensation for injury by providing swift and sure compensation to employees for any workplace injury; it spreads the risk created by the performance of dangerous work to those who contract for and thus benefit from such work, by including the cost of workers' compensation insurance in the price for the contracted work; and it encourages industrial safety." (*Privette, supra,* 5 Cal.4th at p. 701.)

Several cases after *Privette* extended and elaborated upon its doctrine. In *Toland, supra,* 18 Cal.4th 253, we rejected a hirer's liability to an independent contractor's employee under Restatement Second of Torts, section 413, which provides that a person who hires an independent contractor to do inherently dangerous work, but who fails to provide in the contract or in some other manner that "special precautions" be taken to avert the peculiar risks of that work, could be held liable for the resultant injury. The plaintiff attempted to distinguish section 413 from section 416 at issue in *Privette,* which imposes liability for peculiar risks "even though the employer has provided for [special] precautions in the contract or otherwise." (*Toland, supra,* 18 Cal.4th at pp. 260, 263.) The plaintiff argued that section 416 imposed vicarious liability whereas in section 413 liability was direct. We disagreed: "[P]eculiar risk liability is not a traditional theory of direct liability for the risks created by one's own conduct: Liability under both sections is in

essence 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor, because it is the hired contractor who has caused the injury by failing to use reasonable care in performing the work." (*Toland, supra,* 18 Cal.4th at p. 265.) Therefore, "contrary to plaintiff Toland's assertion, our decision in *Privette, supra,* 5 Cal.4th 689, bars employees of a hired contractor who are injured by the contractor's negligence from seeking recovery against the hiring person, *irrespective* of whether recovery is sought under the theory of peculiar risk set forth in section 416 or section 413 of the Restatement Second of Torts. In either situation, it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage." (*Toland, supra,* 18 Cal.4th at p. 267.)

In *Camargo, supra,* 25 Cal.4th 1235, "we held that an employee of a contractor is barred from suing the hirer of the contractor under the negligent hiring theory set forth in [the Restatement Second of Torts,] section 411. Under section 411, a hirer is liable for physical harm to third persons caused by the hirer's failure to exercise reasonable care to employ a competent contractor to perform work that will involve a risk of physical harm unless it is skillfully and carefully done, or to perform any duty the hirer owes to third persons. We rejected the argument that *Privette* and *Toland* were distinguishable on the ground that in a negligent hiring case the hirer is, in a sense, being taxed with his *own* negligence, making his liability *direct.* '[T]he same could be said with regard to an action brought under the peculiar risk theory set forth in section 413. More importantly, under both sections 411 and 413, the liability of the hirer is "in essence 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor, because it is the hired contractor who caused the injury by failing to use reasonable care in performing the work." [Citation.] Therefore, in a negligent hiring case under the theory set forth in section 411, just as in peculiar risk cases under the theories set forth in sections 413 and 416, "it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage." [Citation.]' " (*Hooker, supra,* 27 Cal.4th at pp. 205–206.)

In *Hooker, supra,* 27 Cal.4th 198, a crane operator employed by an independent contractor to help construct a freeway overpass for the California Department of Transportation (Caltrans) would habitually retract the crane's stabilizing outrigger to allow other construction vehicles to pass. When Hooker attempted to swing the boom of the crane without first extending the outrigger, the weight of the boom caused the crane to tip over, and Hooker was thrown to the pavement and killed. (*Id.* at p. 202.) According to the Caltrans construction manual, Caltrans was responsible for compliance with

safety laws and regulations, and its construction safety coordinator was supposed to " '*recognize and anticipate unsafe conditions*' " in its construction projects. (*Ibid.*) Hooker's estate contended there was a triable issue regarding whether Caltrans was liable under a "retained control theory" as described in the Restatement Second of Torts, section 414, which states: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

We rejected Caltrans's categorical argument that we should, for public policy reasons, disallow any recovery by a contractor's employee, even when the hirer retains control over safety conditions. In arriving at this conclusion, we recalled the rationale of *Privette* that " '[a]t common law, a person who hired an independent contractor generally was not liable to third parties for *injuries caused by the contractor's negligence* in performing the work. [Citations.] *Central to this rule of nonliability was the recognition that a person who hired an independent contractor had* " '*no right of control as to the mode of doing the work contracted for.*' " [Citations.]' . . . On the other hand, if a hirer does retain control over safety conditions at a worksite and negligently exercises that control in a manner that affirmatively contributes to an employee's injuries, it is only fair to impose liability on the hirer." (*Hooker*, *supra*, 27 Cal.4th at p. 213, fn. omitted.)

At the same time, consistent with *Privette*'s rule against vicarious hirer liability, we concluded that "it would be unfair to impose tort liability on the hirer of the contractor merely because the hirer retained the *ability* to exercise control over safety at the worksite. In fairness, . . . the imposition of tort liability on a hirer should depend on whether the hirer *exercised* the control that was retained in a manner that *affirmatively* contributed to the injury of the contractor's employee." (*Hooker*, *supra*, 27 Cal.4th at p. 210, first italics added.) We elaborated that "[s]uch affirmative contribution need not always be in the form of actively directing a contractor or contractor's employee. There will be times when a hirer will be liable for its omissions. For example, if the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury." (*Hooker*, *supra*, 27 Cal.4th at p. 212, fn. 3.)

Accordingly, in *Hooker*, we concluded summary judgment was appropriate because Caltrans had not exercised its retained control in a manner that affirmatively contributed to the employee's injury. On the other hand, in the companion case, *McKown*, *supra*, 27 Cal.4th 219, we upheld a jury verdict for an injured employee against the hirer of the contractor, because the hirer had furnished the employee with a defective forklift that had contributed to his injury. (*Id.* at pp. 223–226.)

A useful way to view the above cases is in terms of delegation. As suggested by *Privette*, at common law it was regarded as the norm that when a hirer delegated a task to an independent contractor, it in effect delegated responsibility for performing that task safely, and assignment of liability to the contractor followed that delegation. (*Privette, supra,* 5 Cal.4th at p. 693.) For various policy reasons discussed in *Privette*, courts have severely limited the hirer's ability to delegate responsibility and escape liability. (*Id.* at p. 694.) But in *Privette* and its progeny, we have concluded that, principally because of the availability of workers' compensation, these policy reasons for limiting delegation do not apply to the hirer's ability to delegate to an independent contractor the duty to provide the contractor's employees with a safe working environment. In fact, the policy in favor of delegation of responsibility and assignment of liability is so strong in this context that we have not allowed it to be circumvented on a negligent hiring theory. Nonetheless, when the hirer does not fully delegate the task of providing a safe working environment, but in some manner actively participates in how the job is done, and that participation affirmatively contributes to the employee's injury, the hirer may be liable in tort to the employee.

Using the framework of delegation, we can understand other cases in which the hirer's liability or potential liability has been found. In *Ray v. Silverado Constructors* (2002) 98 Cal.App.4th 1120 [120 Cal.Rptr.2d 251], the employee of a subcontractor was killed when he was struck by a heavy wooden deck blown by a strong wind from a bridge he was helping to construct. He was hit while attempting to secure other construction materials that also had been blown from the bridge, after having stopped his truck so as to block traffic from traveling into the hazardous area. (*Id.* at p. 1124.) His estate sued the general contractor on a negligent retention of control theory. The trial court granted summary judgment for the general contractor, but the Court of Appeal reversed. It reasoned that a highway contractor has a duty to exercise due care to protect the traveling public (see *Breslin v. Fredrickson* (1957) 152 Cal.App.2d 780, 786 [313 P.2d 597]), and that duty may have included the responsibility to close the road to prevent motorists from being harmed by the wayward construction materials. (*Ray v. Silverado Constructors, supra,* 98 Cal.App.4th at pp. 1134–1135.) The court concluded there was a triable issue as to whether the general contractor retained the sole authority to close the road, and whether its failure to do so therefore constituted negligence that led directly to the employee's injury. (*Id.* at pp. 1134–1136.) In other words, the general contractor may have been liable because its delegation of workplace safety to the subcontractor, the plaintiff's employer, was limited and did not authorize the subcontractor to undertake the one safety measure that might have saved the plaintiff's life.

In *Austin v. Riverside Portland Cement Co.* (1955) 44 Cal.2d 225 [282 P.2d 69], a case that predates *Privette*, the employee of an independent contractor

hired by the cement company to work on its premises was electrocuted when the boom of a crane used to repair the company's rock crushing equipment became electrically charged by coming in contact with overhead power lines during nighttime operations. (*Id.* at p. 229–231.) In affirming a verdict for the plaintiff, the court concluded there was evidence that these power lines posed a great hazard to the independent contractor's employees, particularly when the work was carried out at night and the power lines were invisible, and that it was negligent not to request that the power lines be deenergized. (*Id.* at pp. 231–234.) It was also clear from the evidence that the company had the sole authority to request the state, which controlled the power lines, to deenergize the power lines, and that the contractor's supervisor had requested the lines be deenergized but the company superintendent refused because it would have required the plant to be shut down. (*Id.* at pp. 230–232.) Therefore, because the hirer had not delegated to the contractor the authority to undertake a critical employee safety measure, and the contractor's employee was injured as a result of that measure not being undertaken, the court concluded the hirer could be liable to the employee.

With these principles in mind, we review the doctrine of landowner liability and consider how this doctrine relates to the *Privette* doctrine.

B. *Landowner Liability in General and for an Independent*
 *Contractor's Employees*

■ "[T]he basic policy of this state set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property. . . . The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 118–119 [70 Cal.Rptr. 97, 443 P.2d 561] (*Rowland*).) Applying these principles to the facts before it, in which a social guest injured his hand on a cracked water faucet, the court stated: "Where the occupier of land is aware of a concealed condition involving in the absence of precautions an unreasonable risk of harm to those coming in contact with it and is aware that a person on the premises is about to come in contact with it, the trier of fact can reasonably conclude that a failure to warn or to repair the condition constitutes negligence. Whether or not a guest has a right to expect that his host will remedy dangerous conditions on his account, he should reasonably be entitled to rely

upon a warning of the dangerous condition so that he, like the host, will be in a position to take special precautions when he comes in contact with it." (*Id.* at p. 119.)

This formulation is similar to the Restatement Second of Torts, section 343, on which Kinsman in the present case partly relies: "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he [¶] (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and [¶] (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and [¶] (c) fails to exercise reasonable care to protect them against the danger."

"Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition. [Citation.] However, this is not true in all cases. '[I]t is foreseeable that even an obvious danger may cause injury, if the practical necessity of encountering the danger, when weighed against the apparent risk involved, is such that under the circumstances, a person might choose to encounter the danger.' " (*Krongos v. Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 393 [9 Cal.Rptr.2d 124] [duty to protect against obvious electrocution hazard posed by overhead electrical wires]; see also Rest.2d Torts, § 343A [possessor of land liable for obvious danger if "the possessor should anticipate the harm despite such . . . obviousness"].)

■ The question before us is how these general principles apply when a landowner hires an independent contractor whose employee is injured by a hazardous condition on the premises. As we have discussed, the hirer generally delegates to the contractor responsibility for supervising the job, including responsibility for looking after employee safety. When the hirer is also a landowner, part of that delegation includes taking proper precautions to protect against obvious hazards in the workplace. There may be situations, as alluded to immediately above, in which an obvious hazard, for which no warning is necessary, nonetheless gives rise to a duty on a landowner's part to remedy the hazard because knowledge of the hazard is inadequate to prevent injury. But that is not this case, since Kinsman acknowledges that reasonable safety precautions against the hazard of asbestos were readily available, such as wearing an inexpensive respirator. Thus, when there is a known safety hazard on a hirer's premises that can be addressed through reasonable safety precautions on the part of the independent contractor, a corollary of *Privette* and its progeny is that the hirer generally delegates the responsibility to take such precautions to the contractor, and is not liable to

the contractor's employee if the contractor fails to do so. We see no persuasive reason why this principle should not apply when the safety hazard is caused by a preexisting condition on the property, rather than by the method by which the work is conducted.

However, if the hazard is concealed from the contractor, but known to the landowner, the rule must be different. A landowner cannot effectively delegate to the contractor responsibility for the safety of its employees if it fails to disclose critical information needed to fulfill that responsibility, and therefore the landowner would be liable to the contractor's employee if the employee's injury is attributable to an undisclosed hazard. Nothing in the *Privette* line of cases suggests the contrary. As in *Hooker* and *McKown*, the hirer's liability in such circumstances would be derived from the hirer's rather than the contractor's negligence.

In view of the above, the usual rules about landowner liability must be modified, after *Privette*, as they apply to a hirer's duty to the employees of independent contractors. As noted, the Restatement Second of Torts, section 343, states that the landowner's duty is triggered when it "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and [¶] (b) should expect that they will not discover or realize the danger, *or will fail to protect themselves against it.*" (Italics added.) In light of the delegation doctrine reaffirmed by *Privette*, the italicized phrase does not seem applicable to landowner liability for injuries to employees of independent contractors. Because the landowner/hirer delegates the responsibility of employee safety to the contractor, the teaching of the *Privette* line of cases is that a hirer has no duty to act to protect the employee when the contractor fails in that task and therefore no liability; such liability would essentially be derivative and vicarious. (See *Toland, supra,* 18 Cal.4th at pp. 268–270 [no duty to supervise work based on the hirer's "superior knowledge" of the proper safety precautions].)[2] But when the landowner knows or should know of a concealed hazard on its premises, then under ordinary premises liability principles, the landowner may be liable for a resultant injury to those employees.

■ We therefore disagree with the Court of Appeal in the present case inasmuch as it held that a landowner/hirer can be liable to a contractor's employee only when it has retained supervisory control and affirmatively contributes to the employee's injury in the exercise of that control. Rather,

---

[2] The rule articulated above concerns specifically an employee's injury while at work on the landowner's premises. This case does not present the question of landowner liability when the employee is on the premises but not working, as when, for example, the employee is on a part of the premises other than the jobsite.

consistent with the above discussion, the hirer as landowner may be independently liable to the contractor's employee, even if it does not retain control over the work, if: (1) it knows or reasonably should know of a concealed, preexisting hazardous condition on its premises; (2) the contractor does not know and could not reasonably ascertain the condition; and (3) the landowner fails to warn the contractor.[3]

The rule that landowners may be liable to contractors' employees for injuries resulting from latent hazardous conditions was followed in our pre-*Privette* cases. In *Markley v. Beagle* (1967) 66 Cal.2d 951 [59 Cal.Rptr. 809, 429 P.2d 129], for example, the employee of an independent contractor, en route to repair a ventilation fan on the hirer's roof, was injured when a mezzanine railing inside the building gave way. (*Id.* at p. 955.) As the court stated: "Plaintiff was an employee of an independent contractor engaged by the tenant who operated the restaurant to service the ventilating system. He was therefore a business invitee of the owners to whom they owed a duty of reasonable care. They knew or should have known that he would use the mezzanine to get to the fan on the roof, and the jury could reasonably conclude that . . . the owners were negligent in failing to discover the dangerous condition of the railing and to either correct it or adequately warn plaintiff of it." (*Id.* at pp. 955–956.) Nothing in the *Privette* line of cases suggests that *Markley* is no longer good law.

*Abrons v. Richfield Oil Corp.* (1961) 190 Cal.App.2d 640 [12 Cal.Rptr. 271], cited by Unocal, is not to the contrary. In *Abrons*, the employee of an independent contractor was injured when an oil-saturated ditch on the property of the hirer, the Richfield Oil Corporation, caved in. The Court of Appeal affirmed the nonsuit judgment against the employee, stating: " 'The Richfield employees exercised no supervision or control of the [contractor's] employees in the course of the latter's work . . . .' . . . The appellant observed that the ground that was being excavated was 'oil saturated.' His testimony, as set forth in the settled statement, was that the 'deeper he dug the more oil saturation manifested itself and there was an oily odor within the excavation.' Braun furnished no shoring materials. No one 'from the Richfield Oil Corporation was present at any time and no one from Richfield observed the work or assisted in any way.' " (*Id.* at p. 646.) Although the *Abrons* court focused on the hirer's lack of supervision and control, the fact that is most telling from the perspective of the present issue is that the hazard in question,

---

[3] We emphasize that the holding would not apply to a hazard created by the independent contractor itself, of which that contractor necessarily is or should be aware. (See *Zamudio v. City and County of San Francisco* (1999) 70 Cal.App.4th 445, 455 [82 Cal.Rptr.2d 664].)

the oil-saturated ground, although perhaps initially concealed, soon became apparent, and the contractor nonetheless failed to take appropriate safety precautions.[4]

Another case cited by Unocal, *Grahn v. Tosco Corp.* (1997) 58 Cal.App.4th 1373 [68 Cal.Rptr.2d 806] (*Grahn*), decided after *Privette* but before *Toland* and the other cases, resembles the present case factually and merits discussion. The employee of an independent contractor contracted asbestos-related lung disease from removing and installing insulation on defendant's jobsite in the 1970's. The plaintiff proceeded on three theories, negligent hiring, retained control, and premises liability.[5] As to the latter theory, the Court of Appeal held that the general negligence instruction given to the jury was prejudicially misleading. "While a hirer has a duty to maintain its premises in a reasonably safe condition for employees of an independent contractor, not every dangerous condition on the hirer's premises subjects the hirer to liability for physical harm to the independent contractor's employees. Where the operative details of the work are not under the control of the hirer and the dangerous condition causing injury is either created by the independent contractor or is, at least in part, the object of the work of the independent contractor, the duty to protect the independent contractor's employees from

---

[4] Other jurisdictions have taken a variety of approaches to the issue of landowner liability to employees of independent contractors, and no single approach has emerged as dominant. In some cases, there are no special rules for liability toward contractor's employees, and general negligence rules are applied. (*Roberts v. Owens-Corning Fiberglas Corp.* (La.Ct.App. 2004) 878 So.2d 631, 639, fn. 5.) Some have not rejected the peculiar risk doctrine in this context and/or have embraced the "superior knowledge" doctrine advocated by the *Toland* concurring and dissenting opinion discussed below. (*PSI Energy, Inc. v. Roberts* (Ind. 2005) 829 N.E.2d 943; *Gutteridge v. A.P. Green Services, Inc.* (Pa.Super.Ct. 2002) 2002 Pa. Super. 198 [804 A.2d 643, 656–658].) Other courts have endorsed rules similar to the one formulated in this opinion. (*Jablonski v. Fulton Corners, Inc.* (N.Y.Civ.Ct. 2002) 193 Misc.2d 135 [748 N.Y.S.2d 634, 638] [landowner liability for defects on premises of which it had actual or constructive notice]; *Plock v. Crossroads Joint Venture* (Neb. 1991) 475 N.W.2d 105, 118–119 [239 Neb. 211] [employer-landowner liable to contractor's employees for latent defects known to employer but not to contractor]; *Glenn v. United States Steel Corp., Inc.* (Ala. 1982)) 423 So.2d 152, 154 [employer not liable for defects that the contractor reasonably should have been aware of].) Other courts allow for recovery only on the theory that the employer has actively retained control of the jobsite and the contractor's work. (*Callahan v. Alumax Foils, Inc.* (Mo.Ct.App. 1998) 973 S.W.2d 488, 490; *Fisher v. Lee and Chang Partnership* (Tex.App. 2000) 16 S.W.3d 198, 200–201 [under Texas statute, retained control and knowledge of latent defect required for premises liability toward the contractor's employee].) In at least one jurisdiction, the landowner is not liable for injuries occurring on the premises where it has temporarily surrendered possession and control of those premises to the contractor. (*West v. Briggs & Stratton Corp.* (Ga.Ct.App. 2000) 244 Ga.App. 840 [536 S.E.2d 828, 832].) In other cases, the rule is not so clear. (See *Jones v. James Reeves Contractors, Inc.* (Miss. 1997) 701 So.2d 774, 782–783 [stating a rule of employer liability based on actual control of contract's work, but suggesting there may be liability for latent defects].)

[5] *Grahn*'s treatment of the first two theories was disapproved of in *Camargo, supra,* 25 Cal.4th at page 1245, and *Hooker, supra,* 27 Cal.4th at page 214.

hazards resides with the independent contractor and not the hirer who may also generally control the premises." (*Grahn, supra,* 58 Cal.App.4th at p. 1398.)

We find the above formulation somewhat confusing and only partly correct. It is not clear, in the context of premises liability, what it means to say that "[w]here . . . the dangerous condition causing injury is either created by the independent contractor or is, at least in part, *the object of the work of the independent contractor,* the duty to protect the independent contractor's employees from hazards resides with the independent contractor and not the hirer who may also generally control the premises." (*Grahn, supra,* 58 Cal.App.4th at p. 1398, italics added.) If the employee of an independent contractor as part of his job, for example, burrows into ground belonging to the landowner/hirer, and is injured when he ruptures an underground storage tank containing a hazardous substance that the landowner knew was present but the contractor did not, the dangerous condition causing the injury was arguably "the object of the work of the independent contractor." (*Ibid.*) But that fact should not preclude landowner liability. What is critical in the above hypothetical is that if the landowner knew or should have known of the hazard and the contractor did not know and could not have reasonably discovered it, then the landowner delegated the responsibility for employee safety to the contractor without informing the contractor of critical information that would allow the contractor to fulfill its responsibility. Under such circumstances the landowner may be liable. Nor would it matter, as Unocal argues, that the substance was not hazardous until the employee performed a certain action that released the hazard. The landowner may be liable for any injury from a latent hazard that a contractor's employee would foreseeably encounter. (See *Rowland, supra,* 69 Cal.2d at p. 119.)

But *Grahn*'s statement regarding the hirer's nonliability for hazards on the premises related to "the object of the work of the independent contractor" (*Grahn, supra,* 58 Cal.App.4th at p. 1398) does point to an important limitation on a landowner's duty toward the contractor's employees. A landowner's duty generally includes a duty to inspect for concealed hazards. (See *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 [114 Cal.Rptr.2d 470, 36 P.3d 11].) But the responsibility for job safety delegated to independent contractors may and generally does include explicitly or implicitly a limited duty to inspect the premises as well. Therefore, the principles enunciated in *Privette* suggest that the landowner would not be liable when the contractor has failed to engage in inspections of the premises implicitly or explicitly delegated to it. Thus, for example, an employee of a roofing contractor sent to repair a defective roof would generally not be able to sue the hirer if injured when he fell through the same roof due to a structural

defect, inasmuch as inspection for such defects could reasonably be implied to be within the scope of the contractor's employment. On the other hand, if the same employee fell from a ladder because the wall on which the ladder was propped collapsed, assuming that this defect was not related to the roof under repair, the employee may be able to sustain a suit against the hirer. Put in other terms, the contractor was not being paid to inspect the premises generally, and therefore the duty of general inspection could not be said to have been delegated to it. Under those circumstances, the landowner's failure to reasonably inspect the premises, when a hidden hazard leads directly to the employee's injury, may well result in liability.

### C. *Application to the Present Case*

The crux of Kinsman's case is that Unocal knew that asbestos used to insulate the pipes found at its refinery, which was released as dust when the insulation was replaced, was hazardous; furthermore, Kinsman and the contractor for whom he worked did not know of the hazard, either because they did not know they were being exposed to airborne asbestos or did not know that asbestos was hazardous. In light of these facts, Kinsman contends Unocal was negligent in failing to warn the contractor or failing to provide proper safety equipment.

As an initial matter, we note there is no reason to distinguish conceptually between premises liability based on a hazardous substance that is concealed because it is invisible to the contractor and known only to the landowner and premesis liability based on a hazardous substance that is visible but is known to be hazardous only to the landowner. If the hazard is not reasonably apparent, and is known only to the landowner, it is a concealed hazard, whether or not the substance creating the hazard is visible. Unocal does not appear to dispute this proposition.

Unocal contends, however, that knowledge of the hazards of asbestos was public at the time Kinsman was injured in the 1950's, and that Kinsman is in effect attempting to resurrect the "superior knowledge" theory of liability proposed by Justice Werdegar's concurring and dissenting opinion in *Toland*, which was rejected by the majority. As the concurring and dissenting opinion stated: "[W]hen conditions within the special knowledge or control of the hirer create a danger inherent and peculiar to the work, there is no justification in statute, policy or precedent to immunize the hirer from tort liability for his or her own failure to require reasonable precautions be taken against the danger. Tort liability for injuries to the contractor's employees should, therefore, be recognized only when the hirer 'was in a better position than the contractor either to anticipate dangers to workmen, to foresee and evaluate the best methods of protection, or to implement and enforce compliance with appropriate on-site safety precautions.' " (*Toland, supra,* 18 Cal.4th at p. 271 (conc. & dis. opn. of Werdegar, J.).)

The *Toland* majority concluded that the standard was impractical and would undermine the *Privette* doctrine. (*Toland, supra,* 18 Cal.4th at p. 268.) "The term 'superior knowledge' has superficial appeal when considered in the abstract, but its practical application presents considerable difficulties. How is a trier of fact to determine whether to impose liability based on the relative knowledge of two parties, each of whom is 'knowledgeable' in some form or degree? Must the general contractor's knowledge be 'superior' with regard to industry practices or must it be 'superior' with regard to the actual instrumentality of the injury? Does a general contractor with 25 years of experience in the construction industry possess greater or lesser knowledge than a subcontractor with 5 years of experience in a particular building trade? There is little basis on which a jury could sensibly impose liability using the concurring and dissenting opinion's 'comparative knowledge' rule." (*Toland, supra,* 18 Cal.4th at p. 268.) The majority concluded: "In the end, the concurring and dissenting opinion would effectively deprive general contractors of a right available to any other hiring person: the right to delegate to independent contractors the responsibility of ensuring the safety of their own workers." (*Id.* at p. 269.)

■ The theory of premises liability we adopt in this case is significantly different from the superior knowledge theory for several reasons. First, under the premises liability theory, the hirer would only have liability if the contractor did not know and could not reasonably have ascertained the hazard, and therefore the practical problem of identifying whose knowledge is superior does not come into play. Furthermore, whereas the "superior knowledge" theory applies generally to "special risk[s] or the precautions necessary to avoid [them]" (*Toland, supra,* 18 Cal.4th at p. 277 (conc. & dis. opn. of Werdegar, J.), the premises liability doctrine articulated here applies only to preexisting hazardous conditions on the landowner's premises. We would not be creating a new duty or liability but rather applying, and in fact limiting, a duty traditionally imposed on landowners. Moreover, we fully reaffirm the right of hirers "to delegate to independent contractors the responsibility of ensuring the safety of their own workers." (*Id.* at p. 269.) But we would recognize that such delegation is ineffective when the hirer, as landowner, fails to provide the contractor with the information—the existence of a latent hazard—necessary to fulfill that responsibility.

In fact, Kinsman claims that this is a latent hazard case, and disavows any reliance on the "superior knowledge" theory. He argues that there was *no* evidence that Kinsman's employer, Burke & Reynolds, had any knowledge, in the 1950's when Kinsman's injuries were incurred, that asbestos dust was hazardous, and that there was considerable evidence that Unocal knew of the hazards. Kinsman further points out that the present case differs significantly from *Grahn*, in which a premises liability theory based on asbestos exposure was rejected, in that the exposure in *Grahn* occurred in the late 1970's and

1980's, after asbestos had become widely recognized as a carcinogen. (*Grahn, supra,* 58 Cal.App.4th at pp. 1380–1381.) Therefore the *Grahn* court was justified in stating that the hirer was "entitled to assume" that the contractor would take proper safety precautions (*id.* at p. 1398), an assumption that did not apply in the 1950's when the injury in question occurred.

Unocal argues that *Toland* not only rejected the "superior knowledge" theory, but held that the hirer's liability as a landowner to the independent contractor is limited to instances of fraudulent concealment, and that there is no evidence of fraudulent concealment in the present case. As *Toland* stated: "Our decision in no way precludes employees of independent contractors from seeking recovery from a general contractor or other hiring person for personal injury resulting from a failure to disclose a concealed preexisting danger at the site of the hired work that was known to the hiring person. Recovery in such a case would be for fraudulent concealment or misrepresentation, however, and would not involve the 'comparative knowledge' analysis proposed by the concurring and dissenting opinion, nor would it depend on the peculiar risk doctrine." (*Toland, supra,* 18 Cal.4th at pp. 269–270, fn. 4.)

■ The above statement, while correct, is incomplete. "It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered." (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195 [81 Cal.Rptr.2d 521, 969 P.2d 613].) *Toland* did not involve premises liability for latent hazards, and the court had no occasion to decide the precise conditions under which such liability would attach. (*Toland, supra,* 18 Cal.4th at p. 257 [plaintiff injured while helping to raise a heavy wall during the construction project].) As explained above, landowner liability in this instance is measured by a negligence standard, and therefore a landowner would be liable not only when it deliberately withholds information but also when it negligently fails to discover or disclose latent hazards. (See *Markley v. Beagle, supra,* 66 Cal.2d at pp. 955–956.) Therefore, the element of fraudulent intent required in fraudulent concealment cases (see *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 482 [80 Cal.Rptr.2d 329]) is not necessary for premises liability in the present circumstances.

■ Unocal, following the Court of Appeal, further contends that what hazards existed on the jobsite were created by other independent contractors and were not Unocal's responsibility. We agree in the abstract that a landowner that does not retain control is not automatically liable for an injury inflicted by an independent contractor or its employees on the employee of *another* independent contractor. As discussed, *Privette* recognized the rule at common law that "a person who hired an independent contractor generally

was not liable to third parties for injuries caused by the contractor's negligence in performing the work." (*Privette, supra,* 5 Cal.4th at p. 693.) That rule was eventually limited by the need to fairly compensate the victims of the contractor's negligence, but that limitation is unnecessary when workers' compensation benefits, paid for indirectly by the hirer in the cost of the job, are available. (*Id.* at pp. 694, 699–700.) Such is the case here, because workers' compensation coverage insures against all injuries in the course of employment, including injuries inflicted by employees of other contractors. (See Lab. Code, § 3600; *Dimmig v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 865 [101 Cal.Rptr. 105, 495 P.2d 433] [workers' compensation covers all acts reasonably contemplated by the employment].) Therefore, although the policy considerations are not identical to those in *Privette* in every respect, they point to a similar conclusion: that, as at common law, the hirer/landowner who has not retained control over the work and who was not itself actually on notice of a concealed hazardous condition that causes injury should not be derivatively or vicariously liable for injuries contemporaneously inflicted by an independent contractor on another contractor's employee. (See *Smith v. ACandS, Inc.* (1994) 31 Cal.App.4th 77, 96 [37 Cal.Rptr.2d 457], disapproved other grounds in *Camargo, supra,* 25 Cal.4th at p. 1245 [coming to the same conclusion].)[6] As elaborated below, however, Kinsman argues there is no evidence that other independent contractors' negligence led to his injury.

Finally, Unocal argues that even if Kinsman's claim against it does not fail as a matter of law, the present verdict cannot stand because the jury was not properly instructed. As discussed, the trial court instructed the jury both on a premises liability theory and on a negligent retention of control theory, and rendered a plaintiff's verdict on only the former. As to that former theory, the jury received a modified BAJI No. 8.01 instruction: "The owner or occupant of premises is under a duty to exercise ordinary care in the use, maintenance, and management of the premises in order to avoid exposing persons to an unreasonable risk of harm. This duty exists whether the risk of harm is caused by the natural condition of the premises or by an artificial condition created on the premises. This duty is owed to persons on the premises and to persons off the premises. A failure to fulfill this duty is negligence. [¶] Ordinary care is that care which persons of ordinary prudence would use in order to avoid injury to themselves or others under circumstances similar to those shown by the evidence. [¶] You must determine whether a person under the same or similar circumstances as the defendant Unocal should have foreseen that a person such as the plaintiff Ray Kinsman would be exposed to an unreasonable risk of harm. If you so find, you are instructed that the

---

[6] This rule, of course, does not extend to hazardous conditions created by other independent contractors that, after a passage of time, become latent hazards on the premises that a landowner is aware of or should have reasonably discovered.

defendant Unocal owed plaintiff Ray Kinsman a duty of care and you should determine if the defendant exercised that care, considering all the surrounding circumstances shown by the evidence."

The above instruction, while an accurate statement of premises liability generally, is partly erroneous when applied to the present situation. As discussed, when, as in the present case, the "dangerous or defective condition" is one that can be remedied by taking reasonable safety precautions, the landowner who has delegated job safety to the independent contractor only has a duty to the employee if the condition is concealed. Because the general premises liability instruction given does not make clear that the hazard must have been unknown and not reasonably ascertainable to the independent contractor that employed Kinsman and to other contractors working contemporaneously on the premises—the jury instruction was in error.

When deciding whether an instructional error was prejudicial, "we must examine the evidence, the arguments, and other factors to determine whether it is *reasonably probable* that instructions allowing application of an erroneous theory *actually* misled the jury." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 581, fn. 11 [34 Cal.Rptr.2d 607, 882 P.2d 298].) A "reasonable probability" in this context "does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715 [34 Cal.Rptr.2d 898, 882 P.2d 894].)

We conclude that the failure to properly instruct the jury in this case was prejudicial. Although the jury, in finding Unocal negligent under a premises liability theory, implicitly found that Unocal knew or should have known of the hazard of asbestos dust on its property, it made no finding about whether Kinsman's employer, Burke & Reynolds, or any other contractor working at the same time as Kinsman, knew or should have known of the hazard, and whether Unocal was or should have been aware that these contractors did not know of the hazard. As discussed, a finding that these contractors did know that the dust in the refinery was asbestos and was hazardous to an employee like Kinsman, would, under the principles articulated in the *Privette* line of cases and in this opinion, completely relieve Unocal of liability for any resultant employee injury.

Whether a hazard is concealed is a factual matter, and the record before us is inconclusive on this issue. On the one hand, there is no evidence in the record before us regarding whether Burke & Reynolds, or any other contractor working on the job site, knew about the hazards of asbestos or even whether asbestos was present. In fact, Kinsman points out that there was no evidence that Unocal used independent contractors, as opposed to its own employees, to remove and replace the insulation.

On the other hand, the various reports issued to the oil industry in the 1930's and 1940's, from which Unocal obtained its knowledge, were not secret or classified, and there was a limited public knowledge about the health hazards of asbestos dust.[7] Unocal further points to the jury's finding that 85 percent of the liability for Kinsman's injury was attributable to "all others," and contends that the jury implicitly found other independent contractors at fault for his injury. It conjectures that the jury implicitly found that Unocal was negligent in its failure to properly supervise and monitor these independent contractors, which under the *Privette* doctrine could not serve as a basis of liability. Kinsman contends to the contrary that the "all others" refers to asbestos manufacturers and related entities. It is not clear from the record before us which contention is correct.

In short, a properly instructed jury may have concluded, based on the record before us, that the contractors knew or should have known about the airborne asbestos hazard, which would have meant a verdict in Unocal's favor. But the evidence does not compel that conclusion. Because the evidence is capable of inferences in both Kinsman's and Unocal's favor, and because the concealed hazards issue was never properly submitted to the jury, it is appropriate to reverse the judgment and to remand for a new trial on that issue.[8]

---

[7] The state of the general public's knowledge of the hazards of asbestos in the 1950's was summarized in the deposition testimony of Dr. Barry Castleman, an environmental health consultant testifying for Kinsman. He stated that there "were scattered reports in such places as Scientific American in 1949. . . . [I]f you knew to look up cancer in the encyclopedia [Britannica], you see a reference to asbestos as a cause of occupational cancer there. But, I mean, aside from these very few things, you know a scant quote of Dr. Hueper saying that maybe things like asbestos and other carcinogens are responsible for the rising rate of lung cancer in cities, in Newsweek in May 1950. I mean, you can count these things almost on one hand. It wasn't really until the 1970s with the environmental movement, with the creation of federal agencies like the Environmental Protection Agency and OSHA, with the kind of media coverage that came with that, the people started, and the general population, to know about asbestos."

[8] Unocal argued in its motion for a judgment notwithstanding the verdict, and continues to argue before this court, that, apart from the *Privette* issue, there was insufficient evidence to support the jury's finding that Unocal was negligent, because of the lack of evidence that Kinsman was exposed to asbestos at levels then thought to be unsafe under prevailing industry standards. Kinsman asserts the contrary, as explained in the statement of facts above. Although the Court of Appeal consolidated Unocal's appeal from the denial of that motion with its appeal from the jury verdict, it never ruled on the denial of the motion or on the insufficient evidence issue, perhaps because its disposition was tantamount to a death knell for Kinsman's action. We do not decide the sufficiency of the evidence issue in the first instance, which is not fairly included within the scope of the issues of which we granted review, but rather direct the Court of Appeal to decide it on remand.

### III. Disposition

The judgment of the Court of Appeal is affirmed in part, inasmuch as it overturns the judgment of the trial court, but reversed inasmuch as its instructions on remand to the trial court are at variance with the principles set forth in this opinion. The case is remanded to the Court of Appeal for proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Cornell, J.,[*] concurred.

Appellant's petition for a rehearing was denied March 1, 2006, and the opinion was modified to read as printed above.

---

[*]Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.