Filed 9/27/23  Vandorien v. Dept. of Transportation CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| CONNIE VANDORIEN et al., | C096220 |
| Plaintiffs and Appellants, | (Super. Ct. Nos. 192661, 192674) |
| v. | |
| DEPARTMENT OF TRANSPORTATION, | |
| Defendant and Respondent. | |

During the Carr Fire in 2018, the Department of Forestry and Fire Protection (CalFire) contracted with several private entities to assist with fire suppression efforts. Plaintiffs Donald Andrews and Terry Cummings, and decedent Don Smith, were bulldozer operators employed by three of these private entities, and they were instructed by CalFire to create containment lines intended to deprive the fire of additional fuel.[1]  In the course of their fire suppression efforts, the fire overtook their bulldozers, injuring Donald and Cummings and killing Smith.

---

[1]  Because Donald Andrews's wife, Debra, is also a plaintiff, we will refer to the Andrewses by their first names to avoid confusion.

1

In their second amended complaint (SAC), Donald, Debra, and Cummings (combined "Andrews and Cummings") sued the Department of Transportation (CalTrans), alleging that CalTrans had created a dangerous condition on property it owned or controlled by failing to properly assess fire risk and to adequately maintain vegetation along the portion of State Route 299 (SR-299), where the fire allegedly started.

In a separate case brought by hundreds of plaintiffs, including the heirs of Don Smith (the heirs), the heirs brought a wrongful death claim against CalTrans, raising nearly identical allegations of a dangerous condition on SR-299.

CalTrans successfully demurred to the SAC and the heirs' wrongful death claim on the basis that it was not liable under our Supreme Court's holding in *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*) and its progeny, which generally prohibit an independent contractor or its employees from suing the hirer of the contractor for workplace injuries except where the hirer has negligently exercised retained control or concealed a preexisting hazard.

Appellants now contend the trial court erred by sustaining CalTrans's demurrer because the *Privette* doctrine does not apply to their causes of action, and, even if it does, both exceptions to the doctrine apply here. We disagree and affirm.

The heirs additionally contend that we may review the trial court's decision to sustain CalTrans's demurrer to a separate cause of action for mandatory duty, which the court sustained with leave to amend. We conclude we lack jurisdiction to consider that nonappealable order.

## FACTS AND PROCEEDINGS

*Andrews's and Cummings's Original and First Amended Complaints*

Andrews and Cummings filed their original complaint on June 6, 2019, in Shasta County against the State of California, CalTrans, and CalFire. The original complaint alleged that on July 23, 2018, "a vegetation fire started on the shoulder of and within the

2

right of way of SR-299 near Carr Powerhouse Road, in the Whiskeytown National Recreation Area, Shasta County, California, and spread through Shasta and Trinity counties, including the City of Redding." The complaint asserted upon information and belief that a disabled car started the fire by igniting vegetation on the shoulder of the road. This fire came to be known as the Carr Fire.

The complaint further alleged that Donald and Cummings were two bulldozer operators who worked for entities (contractor-employers) that contracted with CalFire to assist with efforts to suppress the Carr Fire. On July 26, 2018, they were assigned to a division by CalFire and were instructed to respond to CalFire's "Dozer Supervisor." They were assisting with fire suppression efforts when the fire overtook their bulldozers, causing serious injuries.

The complaint asserted four causes of action. First, it alleged as against the state and CalTrans that CalTrans owned, controlled, or was otherwise responsible for maintaining the portion of SR-299 where the Carr Fire began, that CalTrans negligently created a dangerous condition by, among other things, failing to adequately maintain the vegetation in the area so as to mitigate fire risk, failing to adequately prepare for emergency response, and failing to timely or reasonably evacuate persons at risk, and that Donald and Cummings were injured as a direct and proximate result of the dangerous condition CalTrans had created.

Second, the complaint alleged as against the state and CalFire that CalFire created a dangerous condition by, among other things, failing to provide and maintain functioning communications systems. It alleged that Donald and Cummings had been instructed by CalFire to create a containment line, they were following CalFire's instructions at all relevant times, and CalFire was responsible for their supervision and safety, including by providing them with a functioning communications system through which they could be told to evacuate. The complaint alleged that Donald and Cummings

3

sustained injuries that were caused by CalFire's failure to correct the dangerous condition it had created.

Finally, the complaint alleged that CalFire's and CalTrans's conduct had negligently inflicted emotional distress, and Debra claimed loss of consortium.

In December 2020, Andrews and Cummings filed a first amended complaint (FAC), which alleged two causes of action against CalTrans only: (1) dangerous condition of public property brought by Donald and Cummings; and (2) loss of consortium brought by Debra. Similar to the original complaint, the dangerous condition cause of action generally alleged that CalTrans failed, *inter alia*, to adequately maintain vegetation on property it owned or controlled, assess the risk of fire, establish fire prevention measures, maintain or create fire breaks, have an evacuation plan in place, and evacuate persons at risk in a timely manner, causing Donald and Cummings to suffer injuries.

*The Heirs' Allegations*

In a separate case, more than 800 plaintiffs who were alleged to have been injured in the Carr Fire brought a class action raising claims for dangerous condition of property, inverse condemnation, public and private nuisance, breach of a mandatory duty, and wrongful death. (*W. Jaxon Baker et al. v. State of California Department of Transportation* (Super. Ct. Shasta County, 2021, No. 192661) (Baker case).) Among those plaintiffs were the heirs. The ninth cause of action of the third amended complaint alleged that Smith "died while working as a private dozer operator trying to contain the fire," and sought damages from CalTrans on a wrongful death theory of liability on the basis that the agency had created a dangerous condition constituting a fire hazard.

The sixth cause of action asserted that CalTrans breached its mandatory duty under the Fire Code and Health and Safety Code by failing to adequately maintain vegetation on property it controlled, creating a fire hazard, and failing to take proper precautions to prevent or stop the spread of the fire.

4

*CalTrans's Initial Demurrers*

CalTrans demurred to the FAC based on the workers' compensation exclusive remedy rule and *Privette* doctrine, and the primary assumption of risk doctrine. The trial court sustained the demurrer on the basis that the FAC failed to identify whether workers' compensation benefits were available through their contractor-employers. The court granted leave to amend, stating "[t]he burden of establishing an exception to the exclusive jurisdiction of the Workers' Compensation system is upon the Plaintiffs" and "[t]he complaint provides insufficient factual grounds to support such an exception." The court noted that the FAC was vague as to how they were paid for their services, the nature of the delegation of any responsibility from their contractor-employers to CalTrans, and whether CalTrans's exercise of control contributed to their injuries. The court stated that it was "prepared to order focused discovery so that the true facts may be ascertained."

CalTrans also demurred to the heirs' wrongful death cause of action in the Baker case. The trial court sustained the demurrer, concluding that the heirs failed to allege facts sufficient to show a duty imposed on the state under the circumstances because the complaint was vague as to Smith's employment capacity. The court noted that if the heirs amended their cause of action to allege that Smith was an employee of a private construction firm, then the court's analysis of CalTrans's demurrer to the FAC would likely apply, with consideration of any difference in circumstances.

*Andrews's and Cummings's SAC and CalTrans's Demurrer*

Andrews and Cummings subsequently filed the SAC, which is the operative complaint. It named only CalTrans as the defendant, and it raised allegations against "Defendant STATE." The SAC alleged that Donald and Cummings were employed as bulldozer operators by private companies that had contracted with CalFire to assist CalFire's efforts to fight the Carr fire. They were injured while creating contingency lines when the fire overtook their bulldozers. CalFire did not control their work-related

5

activities or their employers, other than to give "mere suggestion of details or cooperation." Instead, CalFire's role was simply to advise Donald and Cummings and their employers regarding work that needed to be done and to "act as eyes and ears regarding the progression of the fire." Their contractor-employers were required to obtain and maintain their own workers' compensation insurance for them, and workers' compensation insurance was not provided for them by any state agency.

The SAC's first cause of action alleged that "Defendant STATE" created a dangerous condition on property it owned or controlled and failed to adequately assess the risk of harm of fire starting on its property.[2] The SAC deleted several allegations

[2] Specifically, the SAC alleged that the state "failed to comply with its obligations under the law, and otherwise created a dangerous condition of property by, and including the following acts or omissions: [¶] Failing to adequately assess the risk of harm of fire starting on its property, including in its right of way; [¶] Failing to adequately consider the risk that a fire starting on the shoulder of SR-299 in the Whiskeytown National Recreation area would, due to surrounding terrain, fuel load, and high ambient temperature, rapidly spread and become uncontrollable; [¶] Failing to establish adequate fire prevention measures; [¶] Failing to comply with the Vegetation Control Plan; [¶] Failing to create an adequate Vegetation Control Plan for the area; [¶] Failing to educate the public about wildland fire dangers and steps that can be taken to prevent or minimize their effects; [¶] Failing to reduce the potential for destructive actions of the fire once ignition occurs; [¶] Negligently inspecting, maintaining and controlling SR-299 and the portion of land adjacent thereto, in a manner that allowed or permitted brush and vegetation in the right of way to border the subject roadway, increasing the risk of a wildfire starting alongside the roadway; [¶] Failing to maintain or create sufficient fire breaks; [¶] Failing to create adequate fire safety management practices; [¶] Failing to comply with fire safety management practices; [¶] Failing to properly assess, monitor, inspect, trim, cut, maintain or manage vegetation surrounding and in close proximity to roads or in its right of way, including SR-299; [¶] Failing to conduct adequate, proper and frequent hazard inspections of its roads and right of ways, including SR-299; [¶] Failing to design, construct, install, operate, repair, monitor or maintain its roads and right of ways, including SR-299, in a manner that is safe under the surrounding conditions and in a manner that avoids igniting fires or the spread of fires, especially during long dry seasons with high winds, such as those that face Shasta County[;] [¶] Failing to conduct adequate, proper and frequent inspections of fire-prone areas, such as the Whiskeytown National Recreation Area; [¶] Failing to implement and follow reasonably prudent

6

from the FAC regarding the failure to have an evacuation plan in place, to communicate the evacuation order, and to evacuate at risk persons.  The SAC's second cause of action alleged loss of consortium by Debra.

CalTrans demurred to the SAC and moved to strike it based on the primary assumption of risk doctrine, the workers' compensation exclusive remedy rule, and the *Privette* doctrine.

The trial court overruled the primary assumption of risk ground, but sustained the demurrer without leave to amend on the grounds that the dangerous condition cause of action was barred by the workers' compensation exclusive remedy rule and the *Privette* doctrine.  The court further ruled that the loss of consortium claim was barred as derivative of the dangerous condition claim.

The trial court entered a judgment of dismissal after it sustained CalTrans's demurrer.  Andrews and Cummings timely appealed.

*Baker Case's Fourth Amended Complaint and CalTrans's Demurrer*

The Baker case plaintiffs filed a fourth amended complaint.  As relevant here, the heirs amended their wrongful death cause of action to allege that Smith was not a firefighter employed by the state, but rather was a private bulldozer operator and independent contractor working for a private company assisting with fire suppression efforts.  The complaint alleged that Smith died when the fire overtook him while he was

---

practices of vegetation control and maintenance; [¶] Failing to implement and follow reasonably prudent practices to avoid fire ignition alongside roads and in right of ways; [¶] Failing to comply with applicable statutes, regulations and standards enacted to protect against the type of harm suffered by plaintiffs; [¶] Failing to warn the public of the danger and unsafe condition[;] [¶] Allowing a dangerous condition ( overgrown vegetation) to exist and remain for a significant period of time prior to July 23, 2018; [¶] Allowing a dangerous condition to be created due to the existence of overgrown vegetation alongside SR-299; and [¶] Allowing vegetation that poses a fire risk to accumulate alongside SR-299."  (Bullet points omitted.)

creating a containment line, and the fire that "ultimately resulted in [Smith's] death was a direct, proximate, and legal result" of a dangerous condition on CalTrans's property.

The heirs' wrongful death claim further alleged that CalFire's role was simply to advise Smith and his employer of the work that needed to be done and to "act as eyes and ears regarding the progression of the fire," but CalFire "did not control [Smith] or his employer or the work they performed beyond mere suggestion of details or cooperation." They alleged that his private employer, not CalFire, paid his wages, and neither CalFire nor any other state agency paid for or offered workers' compensation death benefits to Smith's family after he died.

CalTrans demurred again based on the primary assumption of risk doctrine, the workers' compensation exclusive remedy rule, and *Privette*. The trial court again overruled the primary assumption of risk ground and sustained the demurrer without leave to amend on the grounds that the heirs' wrongful death cause of action was barred by the workers' compensation exclusive remedy rule and the *Privette* doctrine.

CalTrans also demurred to the fourth amended complaint's sixth cause of action for mandatory duty, which the trial court sustained with leave to amend.

On February 10, 2022, the trial court entered judgment in favor of CalTrans as to the heirs' wrongful death cause of action.

On April 11, 2022, the plaintiffs in the Baker case petitioned for writ of mandate and/or prohibition challenging the trial court's ruling sustaining the demurrer as to the mandatory duty cause of action; CalTrans opposed. (*Baker et al. v. Superior Court* (Apr. 11, 2022, C096007), petn. den.)[3]  A panel of this court summarily denied that petition.

---

[3] We grant CalTrans's request that we take judicial notice of the petition for writ of mandate and/or prohibition filed in this court, CalTrans's opposition thereto, and this court's order denying the petition. (Evid. Code, § 452, subd. (d).)

8

The heirs timely appealed from the judgment dismissing their wrongful death cause of action. The case was fully briefed on May 31, 2023, and was assigned to the current panel on June 30, 2023.

## DISCUSSION

### I

### *Demurrers*

A complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10, subd. (a)(1).) When a complaint "does not state facts sufficient to constitute a cause of action," a defendant may raise that objection by filing a demurrer. (*Id.*, § 430.10, subd. (e).) "A demurrer tests only the sufficiency of the pleadings and, as such, raises only a question of law." (*Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1305.) A court considering a demurrer ordinarily gives the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) The court treats the demurrer as admitting all material facts properly pleaded, but does not assume the truth of contentions, deductions, or conclusions of law. (*Ibid*.) We independently decide questions of law without deference to the trial court's conclusions. (*Neilson*, at p. 1304.) We will affirm a judgment of dismissal if it is correct on any ground stated in the demurrer, independent of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Modacure v. B&B Vehicle Processing, Inc.* (2018) 30 Cal.App.5th 690, 694.) The appellants have the burden of demonstrating the trial court erred in sustaining the demurrer. (*Smith v. County of Kern* (1993) 20 Cal.App.4th 1826, 1829-1830.)

Although a general demurrer does not ordinarily reach affirmative defenses, it "will lie where the complaint 'has included allegations that *clearly* disclose some defense or bar to recovery.' " (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183.) "Thus, a demurrer based on an affirmative defense will be sustained only where the face

9

of the complaint discloses that the action is necessarily barred by the defense." (*Ibid.*) If " 'the complaint's allegations or judicially noticeable facts reveal the existence of an affirmative defense, the "plaintiff must 'plead around' the defense, by alleging specific facts that would avoid the apparent defense. Absent such allegations, the complaint is subject to demurrer for failure to state a cause of action." ' " (*Esparza v. County of Los Angeles* (2014) 224 Cal.App.4th 452, 459.)

Additionally, we must determine "whether the trial court abused its discretion by sustaining the demurrer without leave to amend. [Citation.] . . . An abuse of discretion is established when 'there is a reasonable possibility the plaintiff could cure the defect with an amendment.' " (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.) Again, the appellants bear the burden of demonstrating error. (*Ibid.*)

II

*The* Privette *Doctrine*

Plaintiffs contend that the *Privette* doctrine does not apply to their claims, and even if it does, its exceptions preclude its application here. As we will explain, we conclude that the well-pleaded facts of the operative complaints demonstrate that the *Privette* doctrine operates to bar plaintiffs' claims. Additionally, we conclude that plaintiffs have failed to demonstrate the trial court abused its discretion by denying leave to amend their complaints.

A. *The* Privette *Doctrine and Its Exceptions*

"At common law, a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work." (*Privette*, *supra*, 5 Cal.4th at p. 693.) This rule was based on the presumption that when one hires an independent contractor, one "delegates to the contractor the responsibility to do the work safely. [Citations.] This presumption is grounded in two major principles: first, that independent contractors by definition ordinarily control the manner of their own work; and second, that hirers typically hire independent contractors

10

precisely for their greater ability to perform the contracted work safely and successfully." (*Sandoval v. Qualcomm Inc.* (2021) 12 Cal.5th 256, 269 (*Sandoval*).)

Over time, exceptions arose to this common law rule, one of which was contracted work that posed an inherent risk of injury, known as the peculiar risk doctrine. (*Privette*, *supra*, 5 Cal.4th at p. 693.) Under that doctrine, "a person who hire[d] an independent contractor to perform work that is inherently dangerous [could] be held liable for tort damages when the contractor's negligent performance of the work cause[d] injuries to others." (*Id.* at p. 691.) In *Privette*, our Supreme Court considered the potential conflict between the peculiar risk doctrine and the system of workers' compensation, which " 'is the exclusive remedy against an employer for injury or death of an employee.' " (*Id.* at pp. 691, 697.)

The *Privette* court concluded, "in the case of on-the-job injury to an employee of an independent contractor, the workers' compensation system of recovery regardless of fault achieves the identical purposes that underlie recovery under the doctrine of peculiar risk: It ensures compensation for injury by providing swift and sure compensation to employees for any workplace injury; it spreads the risk created by the performance of dangerous work to those who contract for and thus benefit from such work, by including the cost of workers' compensation insurance in the price for the contracted work; and it encourages industrial safety." (*Privette*, *supra*, 5 Cal.4th at p. 701.)

*Privette* held peculiar risk liability did not extend to employees of an independent contractor. When "the injuries resulting from an independent contractor's performance of inherently dangerous work are to an employee of the contractor, and thus subject to workers' compensation coverage, the doctrine of peculiar risk affords no basis for the employee to seek recovery of tort damages from the person who hired the contractor but did not cause the injuries." (*Privette*, *supra*, 5 Cal.4th at p. 702.) Thus, the *Privette* doctrine generally bars an employee of an independent contractor from recovering

11

damages from the hirer of the contractor for a worksite injury. (*SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 594.)

Over time, our Supreme Court "recast [its] primary rationale for the *Privette* doctrine in terms of delegation rather than workers' compensation." (*Sandoval*, *supra*, 12 Cal.5th at p. 270.) The court stated its expectation that contractors will "perform the contracted work more safely than hirers," and it "endorsed a 'strong policy' of presuming that a hirer delegates all control over the contracted work, and with it all concomitant tort duties, by entrusting work to a contractor." (*Ibid.*) Thus, "[t]here is a strong presumption under California law that a hirer of an independent contractor delegates to the contractor all responsibility for workplace safety." (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 37.) "Because the hirer presumptively delegates to the independent contractor the authority to determine the manner in which the work is to be performed, the contractor also assumes the responsibility to ensure that the worksite is safe, and the work is performed safely." (*Id.* at p. 41.) "Our premise is ordinarily that when the hirer delegates control, the hirer simultaneously delegates all tort duties the hirer might otherwise owe the contract workers. [Citations.] Whatever reasonable care would otherwise have demanded of the hirer, that demand lies now only with the contractor. If a contract worker becomes injured after that delegation takes place, we presume that the contractor alone—and not the hirer—was responsible for any failure to take reasonable precautions." (*Sandoval*, at p. 271.) This rule applies even where the hirer has failed to comply with preexisting statutory or regulatory workplace safety requirements. (*Gonzalez*, at p. 47.) The court determined that this doctrine promotes workplace safety through "clear rules about who's responsible for avoiding harms to workers when contractors are hired." (*Sandoval*, at p. 264.)

B. *Exceptions to* Privette*: * Hooker *and* Kinsman

The *Privette* doctrine has exceptions, which "apply where delegation is either ineffective or incomplete." (*Sandoval*, *supra*, 12 Cal.5th at p. 271.) In *Hooker v.*

*Department of Transportation* (2002) 27 Cal.4th 198 (*Hooker*), the court concluded that a contractor's employee may sue the hirer of the contractor for the tort of negligent exercise of control where the hirer's "exercise of retained control *affirmatively contributed* to the employee's injuries." (*Id.* at p. 202.)  The court explained, "if an employee of an independent contractor can show that the hirer of the contractor affirmatively contributed to the employee's injuries, then permitting the employee to sue the hirer for negligent exercise of retained control cannot be said to give the employee an *unwarranted windfall*.  The tort liability of the hirer is warranted by the hirer's own affirmative conduct.  The rule of workers' compensation exclusivity 'does not preclude the employee from suing anyone else whose conduct was a proximate cause of the injury' [citation], and when affirmative conduct by the hirer of a contractor is a proximate cause contributing to the injuries of an employee of a contractor, the employee should not be precluded from suing the hirer." (*Id.* at p. 214.)

First, a hirer "retains control" as required by *Hooker* "where it retains a sufficient degree of authority over the manner of performance of the work entrusted to the contractor." (*Sandoval*, *supra*, 12 Cal.5th at p. 274.)  Second, the hirer must also "actually exercise" its retained control, which occurs when the hirer " 'involves itself in the contracted work "such that the contractor is not entirely free to do the work in the contractor's own manner." [Citations.]  In other words, the hirer must exert some influence over the manner in which the contracted work is performed.' [Citation.] 'Unlike "retained control," which is satisfied where the hirer retains merely the *right to* become so involved, "actual exercise" requires that the hirer in fact involve itself' [citation], 'such as by directing the manner or methods in which the contractor performs the work; interfering with the contractor's decisions regarding the appropriate safety measures to adopt; requesting the contractor to use the hirer's own defective equipment in performing the work; contractually prohibiting the contractor from implementing a

13

necessary safety precaution; or reneging on a promise to remedy a known hazard.' " (*McCullar v. SMC Contracting, Inc.* (2022) 83 Cal.App.5th 1005, 1014 (*McCullar*).)

Third, " ' "[a]ffirmative contribution" means that the hirer's exercise of retained control contributes to the injury in a way that isn't merely derivative of the contractor's contribution to the injury.' [Citation.] A hirer's conduct satisfies the affirmative contribution requirement when 'the hirer in some respect induced—not just failed to prevent—the contractor's injury-causing conduct.' [Citation.] 'A hirer's conduct also satisfies the affirmative contribution requirement where the hirer's exercise of retained control contributes to the injury independently of the contractor's contribution (if any) to the injury.' [Citation.] That would be true, for instance, if 'the hirer promises to undertake a particular safety measure, [but] then . . . negligent[ly] fail[s] to do so.' " (*McCullar*, *supra*, 83 Cal.App.5th at pp. 1014-1015; see *Hooker*, *supra*, 27 Cal.4th at p. 212, fn. 3.)

Our Supreme Court recognized a second exception to the *Privette* doctrine in *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 675 (*Kinsman*), in which the court stated: "[T]he hirer as landowner may be independently liable to the contractor's employee, even if it does not retain control over the work, if: (1) it knows or reasonably should know of a concealed, preexisting hazardous condition on its premises; (2) the contractor does not know and could not reasonably ascertain the condition; and (3) the landowner fails to warn the contractor." "[A] landowner-hirer cannot effectively delegate its duties respecting a concealed hazard without disclosing that hazard to the contractor. [Citation.] In this context, a 'concealed' hazard means something specific: a hazard that the hirer either knows or reasonably should know exists, and that the contractor does not know exists and could not reasonably discover without the hirer's disclosure." (*Sandoval*, *supra*, 12 Cal.5th at pp. 271-272.) "If the hirer does not sufficiently disclose the concealed hazard, the hirer retains its tort duties owed to the contract workers respecting that hazard. A contrary conclusion would cut against the rationale justifying

14

*Privette*'s presumption of delegation.  A contractor is not best situated to perform work safely when the contractor lacks critical information about relevant hazards."  (*Id.* at p. 272.)

C.  *Applicability of the* Privette *Doctrine to Plaintiffs' Claims*

We observe at the outset that, for our purposes in determining whether plaintiffs' claims are barred by the *Privette* doctrine, CalTrans and CalFire are both state agencies, and thus "it is the State of California which is the employer with the right of control over employees of both" CalFire and CalTrans.  (*Colombo v. State of California* (1991) 3 Cal.App.4th 594, 598 [California Highway Patrol (CHP) traffic officer is an employee of the State of California, not CHP; lawsuits against state agencies "are in effect suits against the state"].)  Accordingly, although *CalFire* contracted with plaintiffs' contractor-employers, and plaintiffs' complaints asserted causes of action against *CalTrans*, it is the state that is properly considered to be both the hirer and alleged negligent party.

With that understanding, we turn to the application of the *Privette* doctrine. Plaintiffs contend that the doctrine does not bar their dangerous condition causes of action because it only insulates hirers from *vicarious liability* for breach of the duty *to provide a safe workplace*.  They contend the doctrine does not apply here because they seek to hold CalTrans *directly* liable for breach of a different duty:  its duty to mitigate the potential for and severity of fires by properly maintaining vegetation along the shoulders of roads it controls.

As we have discussed, the *Privette* doctrine generally bars a contractor's employee from recovering damages from the hirer of the contractor for a worksite injury (*SeaBright Ins. Co. v. US Airways, Inc.*, *supra*, 52 Cal.4th at p. 594), even where the hirer has created the dangerous condition (*Sandoval*, *supra*, 12 Cal.5th at p. 276; see *McCullar*, *supra*, 83 Cal.App.5th at pp. 1016, 1017 ["[E]ven when the hirer of a contractor negligently creates a known workplace hazard, [our Supreme Court] has concluded that the contractor still retains the responsibility for assessing whether its workers can perform

15

their work safely"]; *Marin v. Department of Transportation* (2023) 88 Cal.App.5th 529, 541 [*Privette* doctrine barred claim that government agency created a dangerous condition under Gov. Code, § 835].)  As our Supreme Court has explained, the hirer that delegates control to the contractor also delegates "all tort duties the hirer might otherwise owe the contract workers." (*Sandoval*, at p. 271.)  In that circumstance, "[w]hatever reasonable care would otherwise have demanded of the hirer, that demand lies now only with the contractor.  If a contract worker becomes injured after that delegation takes place, we presume that the contractor alone—and not the hirer—was responsible for any failure to take reasonable precautions." (*Ibid.*)

In their reply brief and at oral argument, plaintiffs rely on *Flournoy v. State of California* (1969) 275 Cal.App.2d 806, but that case is distinguishable.  In *Flournoy*, a woman died after losing control of her car on an icy bridge, and her heirs sued the state for creating a dangerous condition and for failure to post any warning signs.  The trial court granted the state's motion for summary judgment on the basis that it was immunized from liability for public works built according to a preapproved design (design immunity).  The appellate court reversed.  It concluded that the state had failed to establish a prerequisite for design immunity, and, in any event, the plaintiffs were entitled to pursue their claim for failure to warn because design immunity is limited to a design-caused accident and does not immunize from liability caused by negligence independent of design. (*Id.* at pp. 811, 812, 814.)  But here, unlike *Flournoy*, under the *Privette* doctrine a hirer presumptively delegates to the contractor-employer *all* tort duties that it might otherwise owe to a contractor-employer's employee. (*Sandoval*, *supra*, 12 Cal.5th at pp. 270, 271.)

Adopting a rule that *Privette* could not apply to a hirer who created a dangerous condition would undermine one of the principles underlying the doctrine, which is "rooted" in part on "society's need for clear rules about who's responsible for avoiding harms to workers when contractors are hired." (*Sandoval*, *supra*, 12 Cal.5th at p. 264.)

16

For example, a contractor should not second-guess its responsibility to address a workplace hazard simply because it believes the hirer created the dangerous condition. Instead, a contractor aware of a hazard should simply take necessary precautions to protect its workers from the hazard. (See *Gonzalez v. Mathis*, *supra*, 12 Cal.5th at p. 44 ["once the contractor becomes aware of a concealed hazard's existence, it becomes the contractor's responsibility to take whatever precautions are necessary to protect itself and its workers from the hazard"].)

We agree that the *Privette* doctrine bars claims against the hirer where the hirer is vicariously liable for the injuries suffered by the contractor's employee. Our Supreme Court has explained that *Privette* and its progeny bar claims against the hirer only where the hirer "delegates all control over the contracted work, and with it all concomitant tort duties, by entrusting work to a contractor." (*Sandoval*, *supra*, 12 Cal.5th at p. 270.) A hirer may still be held liable where "the hirer's conduct has affirmatively contributed to the injuries of the contractor's employee." (*McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219, 225.) In such instances, "the liability of the hirer . . . is *not* in essence *vicarious* or *derivative* in the sense that it derives from the act or omission of the hired contractor." (*Ibid*.) However, as we have explained, our Supreme Court has identified two circumstances in which the hirer of an independent contractor may be held directly liable for affirmatively contributing to plaintiffs' injuries: the exceptions stated in *Hooker* and *Kinsman*. Plaintiffs contend that CalTrans may be held liable under both of these exceptions to the *Privette* doctrine.

   D. *Application of the* Hooker *and* Kinsman *Exceptions to the* Privette *Doctrine to Plaintiffs' Claims*

Plaintiffs argue that CalTrans negligently exercised retained control (*Hooker*) by "retain[ing] control over fire safety," and that CalTrans failed to warn their contractor-employers of a concealed hazard (*Kinsman*) because it had the duty to "act as eyes and

17

ears regarding the progression of the fire" and "to warn bulldozer operators" if "they . . . needed to evacuate."

The SAC and the heirs' wrongful death claim included substantial allegations regarding CalFire's role. The SAC alleged that CalFire's role "was simply to advise plaintiffs and their employers of the work that needed to be done, and act as eyes and ears regarding the progression of the fire. However, [CalFire] did not control plaintiffs and their employers or the work they performed beyond mere suggestion of details or cooperation."[4] The SAC provided a detailed list of the myriad ways CalFire did not exercise control over their work: "a. Cal Fire did not exercise control over the details of plaintiffs' work or how it was to be completed or performed; [¶] b. Plaintiffs' private employers were required to obtain and maintain their own worker's compensation insurance coverage for plaintiffs -- it was not provided by Cal Fire; [¶] c. Plaintiffs retained discretion to decide how to complete their job based on their special skills and experience; [¶] d. Plaintiffs only assisted Cal Fire for a short period of time on the Carr Fire, and it was not a long term arrangement; [¶] e. Plaintiffs were not performing Cal Fire's firefighting work -- but, rather, were engaged in their primary profession of dozer operation building contingency lines; [¶] f. Plaintiffs and their employers continued to manage their own crews and teams -- Cal Fire merely advised where work needed to be done, but did not control the details; [¶] g. If plaintiffs received conflicting information from Cal Fire and their private employers, plaintiffs would follow their private employers instructions; [¶] h. Plaintiffs still believed and understood they were working for private employers who [were] simply assisting Cal Fire; [¶] i. Plaintiffs and their private employers retained control over the hours plaintiffs worked; [¶] j. Plaintiffs relied almost exclusively on their private employers' tools and equipment; [¶] k. Plaintiffs had the

---

[4] The heirs' cause of action was substantively identical.

option of refusing any activity asked of them; [¶] l. Cal Fire did not have the ability to terminate plaintiffs' employment; [¶] m. Cal Fire did not pay plaintiffs, rather they remained on their private employers' payroll; [¶] n. Cal Fire did not offer or provide any benefits, including worker's compensation benefits, to plaintiffs."[5]

Contrary to plaintiffs' contention, the operative complaints do not include the allegation that CalFire had the duty to warn bulldozer operators if they needed to evacuate. The SAC deleted all references to a failure to warn, and the heirs' wrongful death cause of action did not allege a duty to warn bulldozer operators of the need to evacuate. The allegation that CalFire had the duty to warn bulldozer operators if they needed to evacuate appears in Donald's and Cummings's Government Claims Act forms, which were attached to the SAC. The heirs attached as an exhibit to their fourth amended complaint only a letter from the state rejecting their application for leave to present a late claim, which did not include substantive allegations.

Generally, when a written document is the foundation of a cause of action or defense and is attached to the complaint as an exhibit and incorporated into it, " 'the court may, upon demurrer, examine the exhibit and treat the pleader's allegations of its legal effect as surplusage.' " (*Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 785-786; see *SCEcorp v. Superior Court* (1992) 3 Cal.App.4th 673, 677.) However, "[i]t is equally well established that an instrument which is made part of the complaint by reference and attached as an exhibit, but which does not constitute the contract upon which the complaint is based, may not supply substantial allegations essential to the statement of a cause of action unless the pleading is framed for that purpose and with that end in view." (*Holly Sugar Corp. v. Johnson* (1941) 18 Cal.2d 218, 226; see *Washer v. Bank of America Nat. Trust & Savings Assn.* (1943) 21 Cal.2d 822, 830 ["[A]n instrument which

---

[5] The heirs' cause of action differed slightly in the order of the items in the list but included essentially the same allegations.

is not the basis of a cause of action or defense falls in a different category; the pleading of such a document as an exhibit is only an assertion of its existence and character"].)

Here, the SAC incorporated the two Government Claims Act forms not as a means of setting forth the grounds upon which plaintiffs rested their claim, but rather merely as evidence of compliance with the government tort claims statutes as a condition precedent to the maintenance of this action. (Gov. Code, § 945.4 ["no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with . . . [§] 910 . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board"].) Paragraph 7 of the SAC alleged that plaintiffs "complied with all administrative claim requirements prior to filing this Complaint," and in a subparagraph to that paragraph alleged that plaintiffs timely submitted their fully-executed Government Claims Act forms, attaching the forms as exhibits and incorporating them by reference. But aside from attaching the documents as confirmation that they had submitted the forms, plaintiffs provided no indication of their intent to use the Government Claims Act forms as a means of setting forth the grounds upon which they rested their claims. Accordingly, we do not consider the factual allegations recited in the Government Claims Act forms but not included in the complaint.

Considering only the well-pleaded allegations set forth in the operative complaints, the allegation that CalFire's role was to "act as eyes and ears regarding the progression of the fire" falls well short of alleging that CalFire employees negligently exercised retained control over plaintiffs' work. First, the allegation that CalFire was expected to monitor the progression of the fire does not suggest that it retained control over "fire safety," as plaintiffs contend. Rather, as we have set forth *ante*, the operative complaints took great pains to specify in detail the extent to which CalFire *did not* exercise any control over the details of plaintiffs' work, additionally alleging that

20

plaintiffs retained control over how they completed their jobs, plaintiffs' contractor-employers continued to manage their own crews and teams, plaintiffs would follow their employers' instructions to the extent they conflicted with those of CalFire, and plaintiffs could refuse any activity CalFire asked of them. The operative complaints do not allege CalFire had the responsibility to warn or evacuate plaintiffs in the event the fire approached their worksite.

Nor do plaintiffs' complaints allege that CalFire " ' "actually exercise[d]" its retained control over the contracted work' " by involving itself in the contracted work " ' "such that the contractor is not entirely free to do the work in the contractor's own manner." ' " (*McCullar*, *supra*, 83 Cal.App.5th at p. 1014.) Again, the operative complaints forcefully and thoroughly alleged that CalFire was not involved in the contracted work, and the vague allegation that CalFire monitored the progress of the fire does not constitute an allegation that it retained and exercised control over safety measures at the worksite.

Finally, the operative complaints failed to allege that CalFire's conduct as the entity monitoring the fire affirmatively contributed to plaintiffs' injuries. The complaints did not allege that CalFire was responsible for warning, and failed to warn, plaintiffs of the approaching fire; indeed, the SAC expressly *deleted* allegations from the FAC that CalFire failed to have a clear evacuation plan in place, failed to communicate evacuation orders, and failed to evacuate persons at risk of injury. Generally, " '[a]n amended complaint "supersedes the original and furnishes the sole basis for the cause of action. [Citations.] The original complaint is dropped out of the case and ceases to have any effect as a pleading, or as a basis for a judgment." ' " (*Bassett v. Lakeview Inn, Inc.* (2006) 140 Cal.App.4th 863, 869-870.)[6]

---

[6] There is an exception to this general rule where " ' "an amended complaint attempts to avoid defects set forth in a prior complaint by ignoring them. The court may examine the

Plaintiffs also argue that the concealed hazard exception (*Kinsman*) applies here because CalFire employees "fail[ed] to disclose critical information needed" for "the safety of [the] employees" (*Kinsman*, *supra*, 37 Cal.4th at pp. 673-674) because it was their duty to " 'act as eyes and ears regarding the progression of the fire,' and 'to warn bulldozer operators' if 'they . . . needed to evacuate.' " But although plaintiffs now argue the concealed hazard was the approaching fire, the operative complaints alleged that the dangerous condition was the state of the inadequately maintained vegetation on and near a road that CalTrans owned or controlled. The complaints did not allege that CalFire or CalTrans concealed the dangerous condition that was alleged in the complaints (the inadequately maintained vegetation), that plaintiffs or their contractors-employers were unaware of the alleged dangerous condition, or that the dangerous condition was not reasonably ascertainable. Indeed, plaintiffs' contractor-employers contracted with CalFire for the purpose of clearing vegetation in order to create containment lines, indicating that plaintiffs and their employers were well aware of the state of the vegetation.

Moreover, even were the approaching fire properly considered the dangerous condition that was properly pleaded as such, there is nothing to suggest that the approaching fire was a preexisting hazardous condition, as opposed to a hazardous condition that developed after plaintiffs had begun working to create the containment lines. (See *Kinsman*, *supra*, 37 Cal.4th at p. 675 [concealed hazardous condition must be preexisting].) Nor do the complaints allege that plaintiffs or their contractor-employers

---

prior complaint to ascertain whether the amended complaint is merely a sham." ' " (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 343.) " 'The sham pleading doctrine is not " 'intended to prevent honest complainants from correcting erroneous allegations . . . or to prevent correction of ambiguous facts.' " [Citation.] Instead, it is intended to enable courts " 'to prevent an abuse of process.' " ' " (*Id*. at p. 344.) We do not construe the revisions to the operative complaints as an abuse of process, but rather as a clarification of the facts plaintiffs wish to present.

were unaware of the approaching fire, or that CalFire failed to warn the contractor-employers. (See *ibid.* [exception requires that the contractor neither know nor be able to reasonably ascertain the condition and that the landowner fail to warn the contractor].)

The well pleaded allegations in the operative complaints clearly disclose that the *Privette* doctrine applies here because the injuries were sustained by employees of contractor-employers seeking to pursue claims against the hirer of the contractor-employers, and plaintiffs' allegations regarding the hirer's role clearly demonstrate the inapplicability of the exceptions to the doctrine. Accordingly, plaintiffs' claims are barred by the *Privette* doctrine.[7]

---

[7] Plaintiffs do not argue that they are entitled to leave to amend, and therefore they have forfeited the issue. (See *PGA West Residential Assn., Inc. v. Hulven International, Inc.* (2017) 14 Cal.App.5th 156, 188-189 [raising request for leave to amend for the first time at oral argument forfeited the issue].) In any event, they have failed to satisfy their burden to show that they are entitled to leave to amend. (See *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 [to satisfy their burden on appeal, "a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading' "]; *Smith v. BP Lubricants USA Inc.* (2021) 64 Cal.App.5th 138, 145 [on appeal, plaintiff must " 'enumerate the facts and demonstrate how those facts establish a cause of action' "].) We note that, after the case was submitted, plaintiffs requested leave to file supplemental briefing to argue for leave to amend as well as to argue the exceptions to the *Privette* doctrine apply. We denied that request because plaintiffs had the opportunity to, but did not, argue for leave to amend in their briefing; further, plaintiffs had the opportunity to, and did, brief the applicability of the *Privette* doctrine and its exceptions. (See *People v. Alice* (2007) 41 Cal.4th 668, 679 [Gov. Code, § 68081 only requires that parties have been given an opportunity to brief the issue decided by the court]; *Gee v. Greyhound Lines, Inc.* (2016) 6 Cal.App.5th 477, 487, fn. 6 [quoting *Alice*].)

Because we conclude plaintiffs' claims are barred under the *Privette* doctrine, we need not and do not address the parties' arguments regarding whether CalTrans entered into a "special employment" relationship with plaintiffs or whether plaintiffs' claims are barred under the primary assumption of the risk doctrine.

*Appealability of Order Sustaining Demurrer with Leave to Amend*

The heirs contend they are entitled to appellate review of the order sustaining CalTrans's demurrer, with leave to amend, as to the sixth cause of action (violation of a mandatory duty) in the Baker case (the class action arising from the Carr fire referenced above). As we next explain, we disagree.

A. *Background*

The sixth cause of action in the Baker case alleged that CalTrans breached its mandatory duty under section 304 of the California Fire Code, causing damages. Section 304.1.1 provides: "Accumulations of wastepaper, wood, *hay*, *straw*, *weeds*, litter or combustible or flammable waste or rubbish of any type shall not be permitted to remain on a roof or in any court, yard, vacant lot, alley, parking lot, [or] *open space . . . .*" (Italics added.) Fire Code section 304.1.2 provides in relevant part: "Weeds, grass, vines, or other growth that is capable of being ignited and endangering property, shall be cut down and removed by the owner or occupant of the premises."

CalTrans separately demurred to the mandatory duty claim and the heirs' wrongful death claim. It demurred to the mandatory duty claim on the basis that Fire Code sections 304.1.1 and 304.1.2 did not support a valid claim for violation of a mandatory duty of the state. Specifically, it argued that establishing public entity liability under Government Code section 815.6 required, as relevant to the demurrer, a showing that "a mandatory duty was imposed on the public entity by an enactment," citing *B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, and *Guzman v. County of Monterey* (2009) 46 Cal.4th 887.[8] CalTrans further argued that such a mandatory duty exists only if the

---

[8] Government Code section 815.6 provides that a public entity is not immune from liability where the public entity "is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is

enactment " 'affirmatively imposes the duty and provides implementing guidelines,' " citing *O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488.  According to CalTrans, because Fire Code sections 304.1.1 and 304.1.2 did not set out rules and guidelines for implementation by CalTrans and did not name CalTrans, and no case imposed a mandatory duty on any public entity, the statutes did not impose a mandatory duty on it.

In sustaining CalTrans's demurrer, the trial court agreed that Fire Code sections 304.1.1 and 304.1.2 did not impose a mandatory duty.  The court observed that the Fire Code did not contain provisions mandating enforcement by CalTrans or any other state agency, and the Legislature did not grant enforcement powers, leading to the conclusion that the Legislature did not compel enforcement by the state.  Nor did Fire Code sections 304.1.1 and 304.1.2 contain directives to any particular agency.

The trial court granted the Baker case plaintiffs 20 days' leave to amend the mandatory duty claim.  In entering its judgment of dismissal following the sustaining of the demurrer as to the heirs' wrongful death claim, the court ordered that the heirs' wrongful death claim be dismissed with prejudice and that the heirs be stricken from the paragraphs in the complaint related to damages sought for Smith's death.  The mandatory duty claim was not dismissed with prejudice, and the heirs have not been dismissed from the Baker case.

B.  *Analysis*

"Under the one final judgment rule, ' "an appeal may be taken only from the final judgment in an entire action." ' [Citation.]  ' "The theory [behind the rule] is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case." ' [Citations.]  [¶]  The one final judgment rule is 'a fundamental principle of

liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

25

appellate practice' [citation], recognized and enforced in this state since the 19th century." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756.)

Generally, an order sustaining a demurrer with leave to amend is not an appealable order. (Code Civ. Proc., § 904.1; *Otworth v. Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 457.) Instead, an " 'order sustaining a demurrer . . . is generally reviewable on appeal from the final judgment in the action.' " (*Singhania v. Uttarwar* (2006) 136 Cal.App.4th 416, 425.)

The heirs argue that they asserted the mandatory duty claim in their wrongful death action, and therefore the trial court's order dismissing their wrongful death claim also dismissed their mandatory duty claim. Accordingly, they contend that the judgment of dismissal as to their wrongful death claim also constituted a judgment of dismissal of their mandatory duty claim. We disagree. By its plain terms, the trial court's order sustaining the demurrer as to the mandatory duty claim expressly stated that the demurrer was "sustained with 20 days leave to amend." The court's judgment of dismissal expressly dismissed with prejudice only the wrongful death claim. There has been no "ultimate order of dismissal" of the mandatory duty claim or "final judgment in the main action."

The heirs also argue that the trial court's order as to the mandatory duty claim is reviewable under Code of Civil Procedure section 906, which provides that the reviewing court, upon an appeal from a final judgment, may review the appealable decision "and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party." Thus, the issue is whether the order as to the mandatory duty claim "involve[d] the merits," "necessarily affect[ed]" the judgment of dismissal, or substantially affected the rights of a party. We conclude it did not.

First, the trial court's order regarding the mandatory duty claim did not involve the merits of the order from which the heirs appealed. The trial court's ruling on the

26

mandatory duty claim concluded that Fire Code sections 304.1.1 and 304.1.2 did not impose a mandatory duty on CalTrans to clear vegetation from spaces it controlled. The court's discussion of the mandatory duty claim was entirely separate from the order appealed from, in which the court concluded the heirs were barred from bringing claims against the hirer of Smith's contractor-employer based on the *Privette* doctrine.

Second, the order sustaining the demurrer to the mandatory duty claim does not *necessarily* affect the order appealed from. The order appealed from concluded that the heirs were barred from bringing their claims against the hirer of Smith's contractor-employer. That conclusion would stand whether or not CalTrans had a mandatory duty to clear vegetation for reasons we discussed *ante*.

Third, we will not review the interlocutory order on the basis that the order "substantially affects the rights of a party." (Code Civ. Proc., § 906.) Section 906 "does not apply to interim orders that are unrelated to the appealable judgment or order from which an appeal is taken." (*Lopez v. Brown* (2013) 217 Cal.App.4th 1114, 1132-1133.) " 'The clear import of [section 906] is to allow an appellate court to review rulings, orders, or other decisions that led up to, or directly related to, the judgment or order being appealed to the extent they substantially affected the rights of one of the parties to the appeal . . . . [¶] Therefore, nonappealable orders or other decisions substantively and/or procedurally collateral to, and not directly related to, the judgment or order being appealed are not reviewable pursuant to section 906 even though they literally may "substantially affect[ ]" one of the parties to the appeal.' " (*Id.* at p. 1135.) "[A] contrary interpretation 'could allow one party to the direct appeal to, in colloquial terms, "open the floodgates" and bring into the appeal all sorts of collateral or other unrelated intermediate decisions that do not affect the other party to the appeal or the appealed decision, thereby potentially increasing exponentially the issues to be addressed on appeal and the use of limited judicial resources to decide those issues.' " (*Ibid*.) The heirs have failed to present any argument as to how their rights or the rights of any other party will be

substantially affected if we do not review the interlocutory order.  In the absence of any indication that any party's rights will be substantially affected, we decline to review the order on that basis.

Based on the foregoing, we dismiss the heirs' appeal of the trial court's interlocutory order sustaining CalTrans's demurrer to the mandatory duty claim with leave to amend.  The plaintiffs in the Baker case are entitled to decide whether to seek to file an amendment addressing the ground on which the demurrer was sustained and, if no amendment is filed, for the entry of an order or judgment of dismissal.  (See *Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396.)

## DISPOSITION

The judgment sustaining the demurrers to the SAC and to the heirs' wrongful death cause of action without leave to amend is affirmed.  The heirs' appeal of the trial court's order sustaining with leave to amend the Baker case's sixth cause of action for breach of mandatory duty is dismissed.  CalTrans shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


                                                          /s/
                                                Duarte, Acting P. J.


We concur:


     /s/
Krause, J.


     /s/
Boulware Eurie, J.